PAUL WAPLES ET AL. V. E. K. MARRAST.

No. 2826.   Decided March 22, 1916.

**1.—Constitutional Law—Primary Election.**

That the law providing for a primary election for presidential candidates is impracticable, unworkable if literally observed, and deficient because of the omission to provide for the nomination of the legal number of presidential electors, would not affect the constitutional power of the Legislature to pass the law. (P. 9.)

**2.—Constitutional Law—Classification.**

The classification of parties by the primary election law into those casting as many as 50,000 votes for governor at the last general election, which were required to hold such primaries, and those casting less, with which it. was optional, the expenses of holding presidential primaries being paid by public taxation only for the class first named, was within the power of the Legislature, and did not render the law unconstitutional though only one party, the Democratic, came within the first named class. (P. 9.)

**3.—Same—Taxation—Public Purpose.**

The funds possessed by counties and available for meeting the expenses of holding a primary election, as required by law, being derived from taxation, can be expended only for public purposes. Const., art. 8, sec. 3; art. 3, sec. 52. (Pp. 9, 10.)

**4.—Same.**

Objects may be public in the general sense that that their attainment will confer a public benefit or promote the public convenience, but not public in the sense that the taxing power of the State may be used to accomplish them. The powers of the State as a sovereignty exist only for governmental purposes, and may be freely exerted in discharge of all its governmental functions, but can not be applied to uses, though public in aim and result, which are not governmental in their nature. (P. 10.)

**5.—Same**

The test of what is a public purpose within the meaning of article 8, section 3 of the Constitution, can be presented by the inquiry:   Is the thing to be furthered by the appropriation of the public revenue something which it is the duty of the State, as a government, to provide?   (P. 11.)

**6.—Same—Elections.** ·

General elections are distinctly related to the discharge of an important public duty; but political parties are merely associations of men for maintaining certain political principles or beliefs in the public policies of the government. They perform no governmental function and constitute no governmental agency. Their primary elections are merely to furnish their nominees as candidates for

suffrage. The State may regulate such elections by proper laws in the interest of fair methods, but the payment of the expenses thereof can not be differentiated from any other expense for carrying out a party object. (Pp. 11, 12.)

**7.—Same.**

Promotion of the purposes of political parties can no more be made an object of public bounty than those of other organizations into which groups of citizens may form themselves,—even less properly in such case, since the object of the organization is the political control of the government. (Pp. 12, 13.)

**8.—Same.**

The primary election law, in so far as it provides for payment from public funds of the several counties of the expenses of holding Democratic presidential primaries is unconstitutional and unenforceable. (P. 13.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Cecil H. Smith, Walter Collins,* and *James B. Stubbs,* for appellants. —Article 3175a, R. S., known as the presidential primary election law, is invalid, because it requires the expenses of such primary to be paid by the respective counties. Const., art. 8, sec. 3; Castner v. Minneapolis, 92 Minn., 86, 99 N. W., 361; Keller v. Corpus Christi, 50 Texas, 614; Glasgow v. Terrell, 100 Texas, 584; Borden v. Trespalacios R. & I. Co., 98 Texas, 509; S. & L. Assn. v. Topeka, 20 Wall., 655; 8 Notes, U. S. Rep., 362-3; City of Covington v. Kentucky, 173 U. S., 231; Frankfort v. Kentucky, 82 S. W., 1008; 6 Words & Phrases, 5816 et seq., 5827. The act also violates Const., art. 3, sec. 52. Same authorities.

Classification must be reasonable. Const., art. 1, secs. 3 and 19; 14th Amendment, Const. U. S.; DeGrazier v. Stephens, 101 Texas, 196; State v. Jansen, 89 N. W., 1128; Middleton v. T. P. & L. Co., 178 S. W., 956; Ex parte Jones, 38 Texas Cr., 482; Gustafson v. State, 40 Texas Cr., 67; Jackson v. State, 117 S. W., 818; Owens v. State, 112 S. W., 1075; S. A. & A. P. Ry. Co. v. Wilson, 19 S. W., 910; G., C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; M., K. & T. Ry. Co. v. Cade, 233 U. S., 648; People v. Strassheim, 22 L. R. A. (N. S.), 1136; State v. Hamilton, 129 N. W., 916; DeWalt v. Bartley, 15 L. R. A., 771.

The entire act must fail if unconstitutional in part. Connolly v. U. P. S. Co., 184 U. S., 561; W. U. T. Co. v. State, 62 Texas, 634; Kimbrough v. Barnett, 93 Texas, 301; State v. Canland, 104 Pac., 285, 24 L. R. A. (N. S.), 1260; Ex parte Towles, 48 Texas, 427.

*John W. Campbell, Chas. H. Theobald,* County Attorney, *Walter E. Crawford,* and *Marion J. Levy,* for appellee.—The Legislature has the right, under the police power of the State, to regulate the conduct of nominations of the political parties of the State, and to define a political party, and the provision that only political parties casting over 50,000 votes at the last general election for Governor and Lieutenant Governor shall be required to hold preferential primary election under

the provisions of the law, the expense of which shall be borne by the counties, is not discriminatory but is a reasonable provision and regulation which the Legislature had the power and right to make. The following are important cases upholding this proposition: DeWalt v. Bartley, 146 Pa., 529, 24 Atl., 186;; Ransom v. Black, 54 N. J. Law, 446, 24 Atl., 489; Ledgerwood v. Pitts (Tenn.), 125 S. W., 1036; State, ex rel. Fitz v. Jensen (Minn.), 89 N. W., 1126; Kenneweg v. Allegheny, 102 Md., 119, 62 Atl., 652; Ladd v. Holmes, 40 Ore., 167, 66 Pac., 714; State v. Drexel ((Neb.), 105 N. W., 174; Ritter v. Douglass (Nev.), 109 Pac., 144; State v. Michel (La.), 46 So., 430. Other authorities to the same effect are: State v. Felton (Ohio), 84 N. E., 88; State v. Poston (Ohio), 51 N. E., 150; Geulsch v. State (Ohio), 72 N. E., 900; Miner v. Olin (Mass.), 34 N. E., 721; Corcoran v. Bennett (R. I.), 36 Atl., 1122; State v. Moore (Minn.), 92 N. W., 4; Coffey v. Democratic General Com. (N. Y.), 58 N. E., 124; Healy v. Wipf (S. D.), 117 N. W., 321; Griffen v. Gesner (Kan.), 97 Pac., 396; State v. Nichols (Wash.), 97 Pac., 728; People v. Board of Election Commissioners, 221 Ill., 9; Scharffer v. Whipple (Colo.), 55 Pac., 180; Hopper v. Stack (N. J.), 56 Atl., 1; Herrera v. State, 180 S. W., 1097; Auto Transit Co. v. Ft. Worth, 182 S. W., 685.

The primary elections are part of the political machinery of the State, so constituted by the act in question, and the payment of the expenses of the holding of the same is for a public purpose, and is not the granting of money to or in aid of any person or association of persons within the meaning of the Constitution. DeWalt v. Bartley, 146 Pa., 529, 24 Atl., 185; State v. Michel (La.), 46 So., 430.

It would be a strange thing indeed if the Constitution permits the State to regulate the affairs of political parties, to set up its agencies of regulation which are responsible to and under the direction of its master, the State at large, and which serves the State and must not serve the objects of the regulation, the parties, and if the same Constitution prohibited the payment of the expenses of such agencies out of the public funds. Might we not as logically say that the State could not pay the expenses of the pure food inspector, whose duty it is to see to the regulation under the police power of the State of the dispensaries of our food supplies? Certainly if the State regulates it has the right to pay for the regulation.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The case involves the constitutionality of what is familiarly known as the Presidential Primary Act of the Thirty-third Legislature, chapter 46, General Laws of 1913. The terms of the Act require the holding of precinct primary elections in the counties of the State on the fourth Tuesday in May in presidential election years by the respective political parties of the State polling as many as 50,000 votes for their respective candidates for Governor at the last preceding general election,—obedience to it being optional with parties so polling a less

number of votes,—for the expression by their qualified electors of their preference of candidates for the party nomination to the offices of President and Vice President of the United States and presidential electors, and likewise their choice of party candidates for the places of delegates to the national conventions of such parties.

The expense of such primary election of a party whose candidate for Governor at the last preceding general election received as many as 50,000 votes, it is provided by the Act, shall be paid out of the county treasury of each county, no provision being made for the expense of the primary election of other parties, if held under the Act.

It is further provided that the votes cast at the election shall be counted, canvassed and returned as required by the general primary law of the State in relation to party nominations for the offices of Governor and Lieutenant Governor.

In respect to the number of presidential electors to be nominated in the primary election, the Act is deficient. It provides only for the nomination of one elector from each congressional district, whereas the State is required to elect at the general election a number equal to its whole number of Senators and Representatives in Congress.

Under the agreed facts of the case, the operation of the Act at the present time is to require only the Democratic party to hold the primary election provided for, since it is, at present, the only party in the State whose candidate for Governor at the last general election received as many as 50,000 votes. It is furthermore agreed that the cost of such a primary election as the Act requires, will be not less than $300,000, and will probably exceed that amount.

The requirement of the general primary law in respect to the time for the canvassing by the State executive committee of the votes cast for candidates for party nominations for Governor and Lieutenant Governor, is that it shall be at a meeting held on the second Tuesday in August of the election year. The Democratic national convention, it appears from the statement of the agreed facts, has been appointed to meet on June 14, 1916. If the primary election should be held and the Act literally observed, the votes cast for delegates could not be canvassed in time for that convention.

The suit was a mandamus proceeding by E. K. Marrast to require the appellants, who compose the Democratic State executive committee, to hold the primary election contemplated by the Act. In the trial court the writ of mandamus was awarded, the learned trial judge in an able written opinion holding the Act valid against the attack made upon it by the respondents. An appeal was prosecuted to the honorable Court of Civil Appeals, which has certified to us the following questions:

1. Is the Act, approved March 27, 1913, article 3175a, Vernon's Sayles' Texas Civil Statutes, void upon the ground that it is in conflict with one or more of the provisions of the Constitution of this State or of the Union as is claimed by appellants?

2. If not void, has the State Democratic executive committee authority to disregard its requirements in so. far as they are impracticable and to supply such regulations as they may deem proper and necessary?

We shall consider only the question of the constitutionality of the Act. That it is impracticable, unworkable if literally observed, and is deficient because of the omission to provide for the nomination of the legal number of presidential electors, are not matters which, if true, affect the power of the Legislature to enact the law.

The authority of the Legislature to require the holding of a primary election by the political parties of the State for the purpose of enabling their members to vote their choice for party nominees for elective offices, whether State or national, and likewise express their preference in the selection of party delegates to party conventions, is undoubted. The legislative right in such an enactment to make, according to their numerical strength, a reasonable classification in respect to the political parties subject to the law, is equally clear. The Act is not invalid under the classification adopted because it applies at the present time to only the Democratic party. It is not to be regarded as having been enacted for only the present day. It was within the province of the Legislature to determine whether the numerically weaker parties should be relieved from its compulsory observance; and, if so, to provide a classification according to the voting strength of the parties. The selection of a voting strength of 50,000 votes as the test does not create an unreasonable classification, and the Act is not, upon this account, to be overturned.

The only serious constitutional question involved by the Act is its requirement that the expense of the primary election shall be borne out of the public treasury of the counties. This presents, nakedly, the question, whether it is within the power of the Legislature to devote the public revenues of the State to the payment of the primary election expenses of political parties. The general primary law relating to the nomination of party candidates for State, district and county offices imposes such expense upon the candidates. Article 3104. In the legislative history of the State this is the first effort, so far as we are aware, to make the expense of a party election a charge upon the public revenue.

Section 3, article VIII of the Constitution, declares:

"Taxes shall be levied and collected by general laws and for public purposes only."

By section 52, article III, it is provided:

"The Legislature shall have no power to authorize any county, city, town, or other political corporation of the State to lend its credit or to grant public money in aid of or to any individual, association or corporation whatsoever," etc.

The funds possessed by the counties of the State and available for the payment of the expense of the primary election provided for by this Act are only those which are derived by taxation. If the payment of such expense is, within the meaning of the Constitution, "a public

purpose," the Act is valid in its provision that it shall be borne out of the public treasury of the counties; otherwise it is not.

Taxes are burdens imposed for the support of the government. They are laid as a means of providing public revenues for public purposes. The sovereign power of the State may be exercised in their levy and collection only upon the condition that they shall be devoted to such purposes; and no lawful tax can be laid for a different purpose. When ever they are imposed for private purposes, as was said in Broadhead v. Milwaukee, 19 Wis., 670, 88 Am. Dec., 711, it ceases to be taxation and becomes plunder.

It is not easy to state in exact terms what is "a public purpose" in the sense in which that term is employed as a limitation upon the State's power of taxation. The framers of the Constitution were doubtless sensible of this difficulty, for they did not attempt to define it. Many objects may be public in the general sense that their attainment will confer a public benefit or promote the public convenience, but not be public in the sense that the taxing power of the State may be used to accomplish them. The powers of the State as, a sovereignty exist only for governmental purposes. They may be freely exerted in the discharge of all the governmental functions of the State; but cannot be applied to uses, though public in aim and result, which are not governmental in their nature. As the means provided for the support of the government in its administrative duties and existing alone for that end, the taxing power may be employed for no purpose save that which in a true and just sense is related to the performance by the State of its governmental office. The appropriation of the public revenue is a legislative power, and the Legislature must necessarily be allowed a large discretion in determining to what uses public moneys may be put. Subject to the constitutional limitation that the public revenue shall be applied to only public purposes, to the prudent husbandry of the Legislature as well as its provident foresight has been committed the public trust of making such use of it as will afford the economical administration of the government which both the spirit and the letter of the Constitution enjoin. The term "public purpose" as used in this relation is not, therefore, to be construed narrowly, so as to deny authority to the Legislature to make such provision for the administration and support of the government in its several branches and subdivisions as will faithfully subserve the present and future interests of the people. The limitation imposed by the Constitution upon the power is, however, imperative. And it is essentially true that it does not permit taxation for all purposes which in a broad and general sense may be regarded as public, but expressly confines its exercise to only those public purposes with which the State, as a government, invested with high and sovereign powers, but only as a grant from the people and, therefore, to be solely used for the common benefit of all of them, and not as a paternal institution, may justly concern

itself, and to which, for that reason, the public revenues may be right-fully devoted.

As to what is a public purpose within the meaning of section 3, article VIII of the Constitution, no better test can be presented than the inquiry: Is the thing to be furthered by the appropriation of the public revenue something which it is the duty of the State, as a government, to provide? Loan Association v. Topeka, 20 Wall., 655, 22 Law. Ed., 455; The People v. The. Town of Salem, 20 Mich., 452, 4 Am. Rep., 400. Those things which it is the duty of the State to provide for the people it is equally the right of the State, by means of the public revenue, to maintain. Within this category fall the general instrumentalities of the government, the public schools, and other institutions of like nature. But the State is wholly without any power to levy and appropriate taxes for the support of those things which, either by common usage or because they are in no proper sense the instruments of government, it is the duty of the people to provide for themselves. It is not all things which answer a public need or fill a public want that it is within the authority of the State to furnish for the people's use or support at the public expense. Manufacturing industries, railroads, public enterprises of many kinds, private schools and private charitable institutions, all afford a service to the public, but the State is without any power to maintain them. Religion is generally esteemed a helpful influence for public morality. But the Constitution expressly declares that no public money shall be granted in aid of any religious organization.

General elections are essential to the public welfare and are distinctly related to the discharge of an important governmental duty, because it is only by their means that the organic law may be amended and in the elective offices public officials be supplied for the various administrative agencies of the State. But is it any duty of the State to provide the people with nominees of political parties for the elective offices of the government? Is it. in any just sense a concern of the State that those offices be filled by only the nominees of political parties? And is there any right in the State to devote the public revenue of the State derived by taxation from the people at large in aid of the purposes of such parties?

A political party is nothing more or less than a body of men associated for the purpose of furnishing and maintaining the prevalence of certain political principles or beliefs in the public policies of the government. As rivals for popular favor they strive at the general elections for the control of the agencies of the government as the means of providing a course for the government in accord with their political principles and the administration of those agencies by their own adherents. According to the soundness of their principles and the wisdom of their policies they serve a great purpose in the life of a government. But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern

the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. They perform no governmental function. They constitute no governmental agency. The purpose of their primary elections is merely to enable them to furnish their nominees as candidates for the popular suffrage. In the interest of fair methods and a fair expression by their members of their preference in the selection of their nominees, the State may regulate such elections by proper laws, as it has done in our general primary law, and as it was competent for the Legislature to do by a proper act of the character of the one here under review. But the payment of the expenses of purely party elections is a different matter. On principle, such expenses can not be differentiated from any other character of expense incurred in carrying out a party object, since the attainment of a party purpose—the election of its nominees at the general elections through the unified vote of the party membership, is necessarily the prime object of a party primary.

The great powers of the State,—and the taxing power is the one to be always the most carefully guarded,—can not be used, in our opinion, in aid of any political party or to promote the purposes of all political parties. They are no more to be made the objects of governmental bounty or favor than any other class of public organizations into which groups of citizens may form themselves. Expenses incurred in the furtherance of their objects can no more be defrayed out of the public treasury than the expenses of other associations of individuals. If it is constitutional to use the public revenues to pay the cost of their primary elections, it would likewise be constitutional to pay the cost of their candidates' campaigns. If the constitutional barrier is removed in the one case, it can not be restored in the other; but it will have to be admitted that any and all kinds of expense of political parties may be lawfully imposed as a part of the public burden of taxation.

For a stronger constitutional reason than would apply to other kinds of public organizations is it the clear duty of the State to withhold the use of its public revenues as an aid to political parties, and particularly as an aid in the holding of their party elections? The object of such parties is the political control of the government; and we regard it as a fundamentally sound proposition that no power of the government· can be constitutionally used in furtherance or aid of the effort of any class or kind of organization, political or otherwise, to obtain the control of the government.

To provide nominees of political parties for the people to vote upon in the general elections, is not the business of the State. It is not the business of the State because in the conduct of the government the State knows no parties and can know none. If it is not the business of the State to see that such nominations are made, as it clearly is not, the public revenues can not be employed in that connection. To

furnish their nominees as claimants for the popular favor in the general elections is a matter which concerns alone those parties that desire to make such nominations. It is alone their concern because they alone are interested in the success of their nominees. The State, as a government, can not afford to concern itself in the success of the nominees of any political party, or in the elective offices of the people being filled only by those who are the nominees of some political party. Political parties are political instrumentalities. They are in no sense governmental instrumentalities. The responsible. duties of the State to all the people are to be performed and its high objects effected without reference to parties, and they have no part or place in the exercise by the State of its great province in governing the people.

We have been pointed to but one authority holding that the public revenues may be used to pay the cost of the primary elections of political parties, State v. Michel, 121 La., 374; but in that case the question received only a casual consideration, and we do not feel at liberty to adopt the conclusion there announced.

Holding an Act of the Legislature to be unconstitutional is never a welcome duty, and this court has never performed it except with reluctance. It is a duty, however, plain and unmistakable when upon mature consideration such is the conviction of the court. The Constitution is the supreme law of the State, and no consideration should be suffered to stand in the way of its enforcement. Tested by legal principles which are clear and established, the payment of the expenses of primary elections of political parties is not a public purpose for which public revenues may be used; and in our opinion the Act in question is, therefore, unconstitutional and unenforceable.

MR. JUSTICE HAWKINS delivered the following concurring opinion:

I concur in the conclusion and also in the general course of reasoning upon which it has been reached, and in nearly all that our Chief Justice has said so well, above. However, I consider it proper for me to say this:

Undoubtedly "common usage" is one very valuable test, or measure, by which the courts may determine whether a given expenditure of public funds is or is not for "a public purpose," and to that effect are the authorities; but I do not regard it as the only test, in any instance.

The distinction between the *maintenance* and the *regulation* of primary elections is drawn, and properly so, in said opinion, and that, indeed, is as far as it is necessary to go in answering the certified question; but, as this is a pioneer case of public importance, I wish, by way of making my own views clear, to emphasize, if possible, said distinction, and, in that connection, to say that said opinion, as I understand it, does not question the power and authority of the Legislature to direct payment, out of public funds raised by taxation, of any and all reasonable expenses which may be incurred in the mere reg-

ulation—but not in the maintenance—of primary elections. DeWalt v. Bartley, 146 Pa. St., 529, 24 Atl., 185, 15 L. R. A., 771, 28 Am. St. Rep., 814.