

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

February 12, 1972

Honorable Robert S. Calvert         Opinion No. M-1068
Comptroller of Public Accounts
State Finance Building              Re:  Whether payment of
Austin, Texas  78711                     vouchers may be made;
                                         whether Article 5.05,
Honorable Bob Bullock                    subdivision 1a(5) and
Secretary of State                       (8), Texas Election
State Capitol                            Code, is constitutional;
Austin, Texas  78711                     and, concerning the au-
                                         thority of the Secre-
                                         tary of State to make
                                         expenditures for con-
                                         duct of primary elec-
                                         tions.

Dear Messrs. Calvert and Bullock:

The close relationship between the matters presented
by your opinion requests and the desirability of having
replies as soon as practicable prompts us to make this
joint reply.

On Thursday afternoon, 10 February 1972, Mr. Calvert
requested our opinion on two basic questions: (1) Can pay-
ment be lawfully made on three specific vouchers presented
for payment by the Secretary of State, Mr. Bullock.  (2)
Whether similar payments may lawfully be made out of ap-
propriations for the Office of Secretary of State.  The
vouchers are of differing natures.  One covers an expense
item which seems authorized by statute and for which legis-
lative appropriation has been made.  The second covers an
item which in part and under proper circumstance might be
authorized by law, but which the voucher shows to have
been made by unauthorized persons and for an unauthorized
purpose.  The third covers an expenditure made contrary to
law, for an unauthorized purpose, and by unauthorized per-
sons.  The latter two vouchers concern expenses of a pri-
mary election.  All present the question whether the order
of the Federal Court in Johnson v. Bullock, (the filing fee

-5215-

case, No. CA3-5373-C, Northern District of Texas), confers on the Secretary of State, Mr. Bullock, any power greater than, or different from, that conferred upon him by the Texas Election Code. The answer to Mr. Calvert's second question depends upon whether requests for "similar payments" are requests for payments similar to those authorized by law, or similar to those unauthorized by law.

On Friday afternoon, 11 February 1972, Mr. Bullock requested our opinion whether or not Article 5.05, subdivisions 1a(5) and (8), is constitutional. It has to do with duties of the County Clerk and city clerks or secretaries in conducting absentee voting in primary elections, and with hiring and payment of deputies for such purpose.

A duscussion of the questions, their answers, and the background law viewed by us as compelling those answers appears below.

In summary form: We are of the opinion that one of the vouchers represents an expenditure for which payment may be made, and that the other two vouchers may not be lawfully paid. We are also of the opinion that the Federal Court in Johnson v. Bullock neither intended nor attempted to confer upon the Secretary of State, Mr. Bullock, any power additional to that conferred upon him by state statute, and that Article 5.05, subdivisions 1a(5) and (8), is constitutional (though no public funds are availbable for hiring deputies for conduct of absentee voting in primary elections.)

Nominees of the major political parties in Texas for all major offices are required by statute to be nominated by primary elections. Texas Election Code, Art. 13.02. This has been true since 1905. Acts 29th Leg., 1st C.S., 1905, ch. 11, sec. 117, p. 549. The plan chosen by the state legislature for financing primary elections cannot be used this election year. Johnson v. Bullock, supra. This plan required substantially all the expenses of the primary elections to be borne by the candidates. Filing fee assessments had grown to the exent that a Federal Court found them unconstitutional. Johnson v. Bullock, supra. Carter v. Dies, 321 F.Supp. 1358 (N.D. Tex. 1970). Now primaries are required, but the question remains, how

shall they be funded?  At least two answers are possible.
Either the political parties may pay, or the state may pay,
if permissible under law for it to do so.  The legislature
might choose a scheme placing parts of the cost on both.
We are not concerned with the first possibility except to
observe that it might be desirable for the legislature to
have opportunity to make a choice regarding it.  We are
here concerned only with the latter possibility, the use of
state funds.

Three questions must be considered in discussing the
possible use of state funds.

(1)  Can state funds be used at all?

(2)  Is there existing law to authorize use of state
funds?

(3)  Is there any appropriation of state funds for
primary election expenses?

(1)  Can state funds be used at all?  The answer to
this question turns on whether or not primary elections
are conducted for a public purpose within the meaning of
Section III, Article 8, Texas Constitution.  Waples v.
Marrast, 108 Tex. 5, 184 S.W. 180 (1916).  It was there
held that expenditure of state funds for a presidential
preference primary was not an expenditure for a public pur-
pose.  If the expenditure is not for a public purpose, it
is a grant of public monies to private interests, and vio-
lative of the Texas Constitution, Article III, Sec. 51.
[Article III, Sec. 52, makes the same prohibition appli-
cable to counties and other political subdivisions of the
state].

The question posed in Waples, 184 S.W. at 183 was:

"Is the thing to be furnished by the appropria-
tion of the public revenue something which it is
the duty of the State, as a government, to provide?"

Waples v. Marrast recognized that it was valid for the
state to require primary elections and that it was valid
for the state to regulate those elections.  In Beene v.
Waples, 108 Tex. 140, 187 S.W. 191, 193 (1916) the Texas
Supreme Court held that the state could not pay election

officers for services rendered in conducting a second Democratic Primary for United States Senator.  Whether these holdings stand as a bar to state expenditure at this time is subject to considerable doubt.  In 1916 the State was much smaller, expenses of elections less, and constitutional requirements less refined.  It is conceivable that if the legislature could permissibly require primary elections in 1916 as the most desirable means of insuring purity of the nominative process, the legislature could in 1972 validly determine that population increases, greater election costs, and the development of the primary election process over the last 67 years (since 1905) into an integral part of the state elective process, now require that the state furnish primaries to the people as a public service.  We believe such a legislative determination would be upheld by the courts of this state.  We could not, however, and do not, advise a course of conduct contravening the rule laid down in the Waples cases, unless and until those cases have been distinguished or overruled.  We do not consider it sound to ignore stare decisis in a matter of such great public importance, particularly where, as here, necessity for so doing is doubtful.

The Federal District Court has retained jurisdiction in Johnston v. Bullock, supra, to consider any problems arising out of compliance with its order.  It has also used a proper restraint in attempting to intrude into areas of state law only so much as is absolutely necessary for constitutional reasons.  Nor would it be necessary now for the Federal Court to decide state law in solving the present dilemma.  The test of Waples is public purpose.  The requirements of the Federal Constitution are supreme.  Indeed, the oath of office of every member of the Texas Legislature and all officers of state government requires the best ability of each to preserve, protect and defend the Constitution and the laws of the United States.  Texas Constitution, Art. XVI, Sec. 1.  Primary elections in Texas have been considered purely political party functions by the United States Supreme Court as recently as Grovey v. Townsend, 295 U.S. 45 (1935).  This case was expressly overruled by Smith v. Allright, 321 U.S. 649 (1944) holding that party primaries in Texas had become such an integral part of the state elective process that they constitute state action.  The two cases taken together demonstrate constitutional evolution and refinement.

A public purpose may be defined in terms of federal law as well as state law, and what may be a public purpose under federal law is not necessarily limited to what may be defined as a public purpose under state law (though, as indicated, we doubt the two would differ in this instance.)  If primary elections are for a public purpose within a federal definition more refined now than in 1916 or 1935, they are we believe, for a public purpose under the Texas Constitution and Waples.  We believe the Federal Court should be requested to clarify this point.  We attempt to act as attorney for the state agencies in these matters and therefore will await your request for such action, just as any attorney would await his client's authorization prior to action.

(2)  Is there existing law to authorize use of state funds?  Section 6 of Article VIII of the Constitution of Texas provides that no money shall be drawn from the Treasury but in pursuance of specific appropriations made by law.  Manion v. Lockhart, 131 Tex. 175, 114 S.W.2d 216 (1938); Texas Department of Public Safety v. Morris, 426 S.W.2d 290 (Tex.Civ.App., 1968, revd. on other gds., 436 S.W.2d 124); Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898); Lightfoot v. Lane, 104 Tex. 447, 140 S.W. 89 (1911).

It is settled as the law of this state that under the provisions of Section 44 of Article III of the Constitution of Texas, the legislature is prohibited from appropriating state money unless at the very time the appropriation is made, there is already in force some pre-existing valid law authorizing the appropriation.  Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935); Austin National Bank v. Sheppard, 125 Tex. 272, 71 S.W.2d 242 (1934); State v. Steck, 236 S.W.2d 866 (Tex.Civ.App. 1951, error ref..); State v. Connecticut General Life Insurance Co., 382 S.W.2d 745 (Tex.Sup. 1964).

At the time the current General Appropriation Act was passed there was no valid pre-existing law enacted by the legislature authorizing cost of primary elections to be paid by the state.  On the contrary, the pre-existing law provided for a contrary method of funding primary elections.

(3)  Is there any appropriation of state funds for primary election expenses?  The legislature has made no

attempt whatsoever to make any appropriation to pay costs in primary elections.  On the contrary, as noted above, the costs of holding primary elections prior to Johnson v. Bullock, supra,  was borne by the candidates through filing fee assessments.

Section 6 of Article VIII of the Constitution  of Texas specifically prohibits any money from being withdrawn from the state treasury in the absence of an appropriation by the legislature.  Manion v. Lockhart, supra; Texas Department of Public Safety v. Morris, supra; Pickle v. Finley, supra; Lightfoot v. Lane, supra.  Since no item of appropriation to pay costs for holding primary elections was passed by the legislature, no money can be withdrawn from the treasury for that purpose.  Since the plan for financing primary elections at the time the final Appropriation Act was enacted was through filing fee assessments, no rider in the Appropriation Bill could be construed as authorizing this expense to be borne by the state.

Furthermore, only the legislature is authorized to make an appropriation.  Any rider attempting to authorize the Governor to make an appropriation would constitute an unlawful delegation of legislative power in violation of Article II, Section 1 of the Constitution of Texas.  The situation is different from one in which the legislature has appropriated money for a specific purpose and the amount, due to an extraordinary circumstance, proves insufficient.  The Governor is appropriated funds to provide for the latter situation.  But the legislature has made the prior law and appropriated money for the chosen purpose.

In view of the foregoing, it is our opinion that there is no existing appropriation of state funds that may be used to pay expenses for primary elections.

It is our opinion that in the absence of a judicial determination that the state is authorized to pay costs of holding primary elections, the officials of this state are bound by the construction of the Texas Constitution made by the Supreme Court of Texas in Waples v. Marrast, supra, and Beene v. Waples, supra.  There is no valid pre-existing law authorizing an appropriation to pay

such costs.  In the event a judicial determination were made that the state is able to pay costs in primary elections, it would still be necessary for the legislature to meet and adopt a plan for state held primary elections and pass an appropriation bill in order for funds to be withdrawn from the State Treasury.

Your specific questions are answered as follows:

Voucher No. 284 appears to be an item of state expense and not a cost of conducting primary elections.

Article 1.03 of the Election Code provides:

> "Subdivision 1.  The Secretary of State shall be the chief election officer of this state, and it shall be his responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws.  In carrying out this responsibility, he shall cause to be prepared and distributed to each county judge, county tax assessor-collector, and county clerk, and to each county chairman of a political party which is required to hold primary elections, detailed and comprehensive written directives and instructions relating to and based upon the election laws as they apply to elections, registration of electors and voting procedures which by law are under the direction and control of of each such respective officer.  Such directives and instructions shall include sample forms of ballots, papers, documents, records and other materials and supplies required by such election laws.  He shall assist and advise all election officers of the state with regard to the application, operation and interpretation of the election laws.

> "Subd. 2.  At least thirty days before each general election, the Secretary of State shall prescribe forms of all blanks necessary under this code and shall furnish same to each county clerk.  The Secretary of State shall at the same time certify to each county clerk a

list of all the candidates who have been nom-
inated for state and district offices and all
other candidates whose names have been certi-
fied to the Secretary of State to be placed
on the general election ballot."

Item 8 of the appropriation to the Secretary of State
is an appropriation by the legislature to pay costs of items
specified in Article 1.03.  If we are correct in our assump-
tion that Voucher No. 284 is for sample forms authorized
by the provisions of Article 1.03, it is our opinion the
expense may be paid out of the appropriation contained in
Item 8 of the appropriation to the Secretary of State's
Office.  We do not pass on the question whether the par-
ticular voucher is in sufficient form for the Comptroller
to determine whether the item of expense is one contemplated
by Article 1.03 of the Election Code.

Vouchers No. 282 and No. 283 are obviously expenses
incurred in the conduct of a primary election for which
there is no appropriation made.  You are accordingly
advised that these vouchers may not be paid.

While there is no appropriation for payment for post-
age stamps purchased by a County Democratic Executive
Committee, even if there were, Voucher No. 282 is not in
compliance with Section 42 of Article V of the current
General Appropriation Bill.  Furthermore, it does not
appear that there has been compliance with the procedure
for obtaining printed material prescribed by Section 21
of Article XVI, Texas Constitution.  See State v. Steck,
supra.

Having considered the three questions discussed
above, we move on to consideration of whether the order
of the court in Johnson v. Bullock, supra, confers on
the Secretary of State, Mr. Bullock, any authority addition-
al to that conferred upon him by the Texas Election Code.
Whether the Federal Court could do this seems to us not
at issue, because it seems obvious the Federal Court has
not done it.  In its original order, the Federal Court
ordered the County and State Executive Committees to make
rules for the primary elections as are necessary and con-
sistent with Carter v. Dies, supra.  Johnson v. Bullock,
supra.  The Court, apparently through inadvertence, had

overlooked the fact that the Secretary of State is given a supervisory duty in making rules and regulations to insure uniformity in the application of the election laws. As amended by its order of 2 February 1972, the Order now reads:

> "The County and State Executive Committees are directed to make such rules for the primary elections for 1972 as are necessary and consistent with Carter v. Dies, supra.

> "The Secretary of State is likewise hereby authorized to make such rules and regulations and to take such other action as may be necessary to effectuate this order and for the uniform operation of primary elections consistent with Carter v. Dies.

> "The Court retains jurisdiction to consider any problems arising out of compliance with this Order."

We feel it would come as a distinct surprise to the Federal Court if this order were to be taken as authority for the Secretary of State to choose how primary elections are to be funded in Texas, or as authority for him to expend funds from the state treasury without either legislative authorization or appropriation. The Federal Court has done nothing in disrespect of the doctrine of separation of powers recognized by both state and federal constitutions. We do not impugn to it any such motive. Nor can we perceive any legal basis on which the Secretary of State, Mr. Bullock, a member of the executive branch of government, [Texas Constitution, Article IV, Sec. 1,] could be conceived to be empowered to exercise legislative powers in the place of the Texas Legislature. Indeed, such a conception of power is wholly antagonistic to the Texas Constitution, Article II, Sec. 1.

We do not believe that the Court's Order of 4 February 1972, denying plaintiffs' motion to set aside filing fees set by the Secretary of State, unless approved by the Court upon notice and hearing, is any indication of Court intent contrary to the above. The Court originally stated that reasonable fees, related to legitimate state interest,

would be permissible, and apparently the Court has found nothing in the fee schedule promulgated by the Secretary to be so unreasonable as to require invalidation.  The plaintiffs raised no question concerning the power of the Secretary of State to promulgate a fee schedule, nor any questions relating to whether requirements of due process were honored in its implementation.  The plaintiffs apparently assumed the Secretary could promulgate and enforce some fee schedule.  To assume that the Court's denial of plaintiffs' motion constituted a ruling on some of the most serious questions possible under our form of government; whether an appointed member of the executive branch of government may substitute himself for the duly elected representatives of the people in this exercise of legislative power; is totally unwarranted.  In fact, any assumption that the Court would give cavalier treatment to such an important matter does discredit to the Court.

In our opinion, the power of the Secretary of State, Mr. Bullock, remains the same as that given him under state law, modified only to comply with Carter v. Dies -- and Carter v. Dies manifestly makes no attempt to substitute Mr. Bullock for the Texas Legislature.

We turn now to the question whether Texas Election Code, Article 5.05, Subdivisions 1a(5) and (8) is constitutional.  It is there provided:

> "(5)  Primary elections.  In primary elections held by political parties for nominating candidates to be voted on at general and special elections held at the expense of the county, the absentee voting shall be conducted by the County Clerk.  In primary elections for nominating candidates for city offices, the absentee voting shall be conducted by the city secretary or city clerk.
>
> ". . . .
>
> ". . . .
>
> "(8)  Compensation of clerk for absentee voting.  Neither the County Clerk nor the city secretary or city clerk shall receive any additional compensation for performing the duties

> devolving upon him under this Section, but
> additional deputies necessitated thereby may
> be appointed and compensated under the General
> Law pertaining to appointment of deputies.
> Except as herein required or expressly authorized,
> the County Clerk shall not conduct absentee
> voting in any election.  In all elections
> where some person other than the County Clerk
> or city secretary or city clerk conducts the
> absentee voting, the authority calling the
> election shall fix the compensation of such
> person and his deputies, if any, which shall
> be paid out of the same fund as other expenses
> of the election are paid.  Employees of the
> authority calling the election or employees
> of any political subdivision of the State which
> is affected by the election, with the permis-
> sion of its governing board, may be appointed
> to serve as clerk or deputy clerk for absentee
> voting without additional compensation."

We believe that to some extent this statute is ambiguous. It is unclear whether deputies hired to assist with the conduct of absentee voting in primary elections were intended to be paid from county or city funds, or from funds collected by assessment of fees against primary candidates. We believe the latter was the legislative intent for two reasons.  First, such an intent is in keeping with the general scheme chosen by the legislature for funding primaries, and second, because the former construction would contravene the law as interpreted in Waples v. Beene, supra.  In fact, Waples v. Beene considers an almost identical question of statutory construction and holds that given two possible constructions, only one of which is constitutional, the one constitutional is to be chosen.  Use of public money to pay the deputy clerks contemplated by the above statute, is presently impermissible.

Only the Texas Legislature has power to provide for state conduct of primary elections, and only the legislature has power to appropriate money for that purpose.  If the state is to pay for primary elections, it will be necessary for the legislature to act, and if action by the legislature is to be effective, it must be completed before

any expenditures are made or contracted for.  There must be prior law to support any payments from the state treasury.

In light of the fact that Mr. Bullock has requested we not represent his office in this matter, we suggest that we be authorized to request the Federal Court to use its pending jurisdiction to decide whether conduct of primary elections is a public function required of the state.  At the same time, we would request that the Court make some determination of the other questions considered in this opinion.  While they present matters of state law, there is serious question whether there is a present means to place them immediately before the Texas Supreme Court.  Original jurisdiction of the Texas Supreme Court is limited, and that court does not render advisory opinions.  Neither do federal courts render advisory opinions, but the Federal Court having jurisdiction in this case, would, we feel, furnish necessary clarification concerning the thrust of its orders.

We believe it desirable to have a court decision as soon as possible, so that the Governor may, if possible, be assured, whether the legislature must be called.  We are confident the Governor will give proper consideration to, and take proper action in, this extraordinary situation.  It is our opinion that a court decision is needed before the state may confidently fund primary elections. It is our opinion that a special session of the legislature is required in order to authorize the state to assume the costs of primary elections.

Because of the extraordinary circumstances of this matter, we are furnishing this opinion to each member of the Federal Courts.

### S U M M A R Y

The vouchers presented to the Comptroller of Public Accounts for costs of primary elections may not be legally paid.  The Texas Election Code, Article 5.05, Subdivisions 1a(5) and (8) is constitutional, though funding for payment of deputies from public funds for conducting absentee primary voting is lacking.

Other vouchers may be paid only where there is pre-existing authorization and appropriation of funds.  Only the legislature may choose for the state to fund primary elections.  Only the legislature may appropriate funds for that purpose.  Court clarification of whether funding of primary elections is an expenditure for a public purpose is needed at once and recommended by this office.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. C. Davis
Rex White
John Reeves
Wardlow Lane

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant