**Linda JENNESS, Ethel Mae Matthews, Julie Shields, on behalf of themselves and all others similarly situated,**

v.

**J. J. LITTLE, City Clerk of the City of Atlanta, Georgia.**

**Civ. A. No. 12962.**

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 5, 1969.

Appeal Dismissed Feb. 27, 1970.
See 90 S.Ct. 820.

**926**

Frederic S. Le Clercq, and Robert B. Newman, Atlanta, Ga., for all plaintiffs except Jenness, whose counsel has withdrawn.

Thomas F. Choyce, Asst. City Atty., Atlanta, Ga., for defendant.

Before BELL, Circuit Judge, and HOOPER and EDENFIELD, District Judges.

ORDER

EDENFIELD, District Judge.

On the 9th day of July, 1969, the governing authorities of the City of Atlanta adopted an ordinance pursuant to a state statute (Ga.Laws 1969, p. 2521) establishing certain qualifying fees to be paid by those seeking to have their names placed upon the ballot as candidates for certain city offices in an election to be held on October 7, 1969. The schedule of qualifying fees was as follows: for the office of mayor, $5,000; for the office of vice-mayor, $1,400; for the office of alderman, $1,200; for the office of school board member, $600. This case was be-

gun by a complaint filed by Plaintiff Jenness (a prospective candidate for mayor), seeking to restrain and enjoin the City Clerk of Atlanta from exacting or collecting these fees from the plaintiff, or from others similarly situated, as a prerequisite to having their names placed on the ballot as candidates for such offices. The contention of the original complaint was that the exaction of such fees deprived the Plaintiff Jenness and others similarly situated of certain rights, privileges and immunities, secured by the Constitution of the United States, including equal protection of the law. Plaintiff further contended that the particular schedule of fees was also exorbitant and unreasonable and bore no reasonable relation to any legitimate legislative purpose. She sought a declaratory judgment that the schedule of fees was unconstitutional.

The complaint as originally filed did not seek a three-judge hearing. Thereafter, however, the complaint was amended and rewritten to show that Ethel Mae Matthews, a prospective Negro candidate for alderman, and Julie Shields, a Negro resident and voter of the City of Atlanta, wished to join (intervene) in the complaint. The amended complaint realleged that the qualifying fees in question deprived plaintiffs of their constitutional rights, including equal protection, due process, and freedom of assembly, and further prayed that a three-judge court be convened pursuant to Section 5 of the Voting Rights Act of 1965 (42 U.S.C. § 1973c) on the ground that said ordinance and the 1969 statute under which it was adopted had not been declared valid by the United States District Court for the District of Columbia and had not been approved by the Attorney General, as required by Section 5 of the Voting Rights Act, supra. The amended complaint also alleged that the purpose and effect of the statute and ordinance was to deny or abridge the right to vote because of race or color.

A three-judge hearing was held on August 25, 1969, and an order was entered that the 1969 Act of the Georgia General Assembly (amending the charter

of the City of Atlanta) and the ordinance adopted pursuant thereto were both unenforceable for failure to comply with Section 5 of the Voting Rights Act. In that order the Court further concluded that because of the unenforceability of the statute and ordinance, the City of Atlanta was left with no valid ordinance purporting to fix qualifying fees. The order further provided, however, that nothing therein should be construed as preventing the City of Atlanta from taking such valid action in this regard as it might see fit pursuant to another Georgia statute enacted in 1968 (Georgia Municipal Election Code of 1968, Ga.Ann. Code Supp. § 34A–101 et seq.), it appearing that such code had been approved by the Attorney General in compliance with the Voting Rights Act.

Following this order, the governing authorities of the City of Atlanta, on August 26, 1969, adopted a new schedule of qualifying fees pursuant to the 1968 Act. This ordinance changed the qualifying fees as follows: for mayor, $1,000; for vice-mayor, $600; for alderman, $500; and for school board member, $400.

Still later, on September 3, 1969, Intervenors Matthews and Shields filed a second amendment to the complaint attacking the voting code and the new schedule of fees on the same constitutional grounds as before, and alleging further that the new ordinance adopting a new schedule of fees was itself unconstitutional as failing to comply with Section 5 of the Voting Rights Act since it likewise had not been approved by the Attorney General, although the state statute under which it was authorized and adopted had been so approved. The original plaintiff, Jenness, did not join in this amendment and, so far as appears, she is content with the new schedule of fees adopted on August 26th.

■ The right of Plaintiffs Matthews and Shields to intervene in the case has not been considered by the Court and the first question to be decided is their right and standing to do so. As to the right of Matthews to intervene, the Court has no doubt, she having alleged and her counsel having stated in his place that she wished to become a serious candidate for the office of alderman. As to Plaintiff Shields, the Court entertains some question since it appears that she seeks to intervene merely as a voter, not as a prospective candidate directly affected by the schedule of fees in question. The right to run, however, may, in some situations be an analogue of the right to vote. Moreover, since an adjudication of the rights of Plaintiff Matthews will determine substantially all of the issues in the case in any event, the Court will allow both interventions and proceed to the merits of the case.

■ The contention that the new ordinance establishing a new schedule of fees had to likewise be approved by the Attorney General is rejected. This ordinance was adopted pursuant to the Georgia Municipal Election Code of 1968, supra, which expressly permitted the exaction of qualifying fees (Ga.Ann.Code Supp. § 34A–904) and that Act has been approved by the Attorney General in compliance with the Voting Rights Act, supra. It appears from the evidence in the case and from stipulations made by counsel during argument that qualifying fees have been exacted through the years either in city elections or in city primaries which were tantamount to election and that the revised schedule of fees adopted on August 26th is considerably less than those exacted prior to and at the time of the enactment of the Voting Rights Act of 1965. The Attorney General having expressly approved the State Municipal Election Code, which in turn expressly included a right to exact such fees, and it further appearing that the fees sought to be exacted are less than those in effect when the Voting Rights Act was passed, the Court cannot conclude that every reduction in such qualifying fees has to be separately approved under that Act. The Court is not unaware that the Voting Rights Act prohibits "changes" in the election laws which have not been approved, and that the word "change" has been construed to include even minor changes. It

clearly appears, however, and indeed counsel concede, that the overriding purpose in the enactment of the Voting Rights Act of 1965 was to prevent states and local subdivisions from imposing, in any fashion, more onerous burdens upon the right to vote than those in existence on November 1, 1964. Here, instead of imposing more onerous burdens on the right of a voter to vote for the candidate of his choice, the change imposes burdens which are less onerous. By no possible construction could the Court reach any other conclusion. It thus appears to the Court that the change here in question was not of the character contemplated by the Voting Rights Act but was one in furtherance of the spirit of the Act and was therefore not condemned by it. It would be a strange construction indeed which prevented a state subject to the Act from plainly liberalizing its voting requirements, that being the very end which Congress had in mind. This is not to say that the approval of the Municipal Election Code by the Attorney General would have authorized exorbitant or unreasonable qualifying fees or even an increase in existing fees, but such is not the situation here presented unless, indeed, as plaintiffs contend, all qualifying fees are unreasonable per se—a question to which we will now proceed.

On the constitutional issue, apart from the Voting Rights Act, the basic and ultimate contention of the plaintiffs is that the effect of *any* qualifying fee as a condition precedent to running for public office in an election (as distinguished from a primary) deprives voters, and particularly poor people, of the right to vote for candidates of their choice, particularly those coming from their economic strata of society. They cite White v. Clements, 39 Ga. 232, 244 (1869), holding that in Georgia the right to run for public office is a correlative of the right to vote and holding further that the right of black citizens to seek public office:

"* * * [I]s undoubtedly a fundamental one—one guaranteed by the Constitution, and not only exists, but exists entirely beyond the power of the legislature."

Based on this reasoning they urge that the effect of qualifying fees is condemned for the same reason that poll tax requirements were condemned in Harper v. Virginia State Board of Elections, 383 U.S. 663, 666–667, 86 S.Ct. 1079, 16 L.Ed. 2d 169 (1966). They further urge that this objection is peculiarly true with respect to the present city election because payment of the fee (except for age and city residence requirements) is the sole way in which a candidate can get his name on the ballot. They therefore ask the Court to hold that all qualifying fees are illegal per se or, in the alternative, that the fees presently sought to be exacted are unreasonable in any event.

Plaintiffs are factually correct in stating that under present City law the payment of the fee is the only way an otherwise eligible candidate can get his name on the ballot. While the Georgia Municipal Election Code, supra, would appear to permit cities to provide an alternate means of getting on the ballot, such as by running in a primary or by circulating voter petitions, these provisions only apply to cities having charter power to permit such alternatives, and, at this time, *the City of Atlanta has no such charter power*. We must, therefore, agree with plaintiffs that as matters now stand, payment of the qualifying fee is the only way a candidate can get his name on the ballot.

Plaintiffs cite no authority for the proposition that qualifying fees from candidates are inherently illegal, and the Court has found none. So far as the Court can ascertain, such qualifying fees have been exacted throughout the history of the nation, and those courts which have considered their legality have put their stamp of approval on them.[1] Notwithstanding this fact, however, and

---

1. Bodner v. Gray, (Fla.) 129 So.2d 419, 89 A.L.R.2d 860. *See also* Schweitzer v. City of Plymouth Clerk, (1969) 381 Mich. 485, 164 N.W.2d 35 and Turner v. Fouche, (three-judge court, S.D.Ga.) 290 F.Supp. 648, 652, both of which uphold a property requirement.

based on the poll tax cases,[2] the Court is not entirely satisfied that under the facts of this case the exaction of a qualifying fee as a sole prerequisite to getting one's name on the ballot can be sustained. Whatever may be the right to exact qualifying fees or in lieu thereof to permit primary nomination or circulating petitions, the Court doubts that the length of one's pocketbook alone may be made the yardstick as to whether one's name appears or does not appear on the ballot. Nor is it any answer to say that this is cured by the fact that a candidate can run a "write-in" campaign or that a voter can "write in" the name of his candidate whether on the ballot or not. Atlanta has a charter provision requiring that such write-in ballots be permitted, but to force a candidate to seek election in this fashion is to throw too many hurdles in his path solely because he is without funds to qualify.

As a prospective rule of law, therefore, and with respect to future City elections, the Court holds that to prohibit candidates from getting their names on the ballot solely because they cannot post a certain amount of money is illegal and unconstitutional. We make no such holding with respect to the exaction of a qualifying fee in future elections where the candidate can get his name on the ballot in some other fashion, either by nominating petition, primary election, or pauper's affidavit. Whether the City in the future wishes to continue to collect reasonable qualifying fees in conjunction with such alternatives is a matter for the City to decide.

The question of enjoining the present election, however, presents a different question. This action was filed on July 31, 1969, the first three-judge hearing was held on August 25th, and the second hearing on September 3rd. The period during which candidates may qualify has now been fixed for September 8th through September 10th and the election is to be held on October 7th. Numerous candidates, Negro and white, are already conducting their campaigns. No one knows how many candidates would offer if the qualifying fee was held unconstitutional. To say under these circumstances and at this late hour that the City shall have no way of screening out fictitious and trumped-up candidates could lead to chaos and would most certainly lead to confusion. It is an old political trick in Georgia, and perhaps elsewhere, to flood the ballot with fictitious candidates bearing the same name as genuine candidates, and this in spite of the fact that qualifying fees are exacted. *Compare* Wallace v. Wallace, 225 Ga. 102, 166 S.E.2d 718 (1969). We believe that the *Allen* decision—[3] permits and that good administration and common sense demand that the present election be exempt from the ruling here made.

For all of these reasons, the prayers of the plaintiffs with respect to the current election are denied.

---

2. Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169.

3. Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1.