**Lillian W. THOMAS, Plaintiff,**

**v.**

**Lambert C. MIMS, as Mayor and Commissioner of the City of Mobile, Alabama; Richard L. Smith, as Clerk, City of Mobile, etc.; Albert Brewer, as Governor of the State of Alabama; MacDonald Gallion, as Attorney General of the State of Alabama, etc., Defendants.**

**Civ. A. No. 5702–69.**

United States District Court,
S. D. Alabama, S. D.

Sept. 3, 1970.

E. Graham Gibbons, Mobile, Ala., for plaintiff.

Walter S. Turner, Asst. Atty. Gen., Montgomery, Ala., William H. Brigham, City Atty. City of Mobile, James W. Goodloe, Asst. City Atty., Mobile, Ala., for defendants.

## OPINION AND DECREE

PITTMAN, District Judge.

Plaintiff seeks to have Act No. 287, approved May 5, 1965, Acts of Alabama, Special Session, 1965, Vol. 1, p. 395,[1] declared void for being in violation of the due process clause and the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Act is a general act of local application, that is, by its terms it has general application, but because of population restrictions it applies only to Mobile.[2] The Act requires that candidates for municipal office in Mobile pay a filing fee equal to 2% of the annual salary of the office they seek.

Plaintiff submitted, on July 17, 1969, the qualification papers indicating her intention to run for Mobile City Board of Commissioners, Place Number Three. She also tendered a check drawn in the amount of $300.00 which was the required filing fee, being 2% of the $15,000 annual salary paid members of the Board. The City refused to accept the check because of a restriction on it, that it would be honored by the bank only, "When the U. S. Attorney General rules that the City's Qualification Fee is constitutional," and plaintiff's name was omitted from the ballot for the city election held August 19, 1969. The present action was commenced on October 3, 1969.

Plaintiff contends that the statute violates the Fourteenth Amendment in that the amount required is arbitrary and excessive; and, because filing fees are, per se, unconstitutional restrictions on the right to vote and to seek public office.

Dealing first with the question of excessiveness, this court is unwilling to say that, if filing fees are permissible, $300.00 is an excessive amount. See Wetherington v. Adams, 309 F.Supp. 318 (N.D.Fla.1970); Bodner v. Gray,

---

1. Section three of the Act provides:

"Any person desiring to become a candidate for a city commissioner's position in any city to which this act is applicable shall, at the time of filing such statement or affidavit of candidacy as now or which may hereafter be required by law, also deposit with the city clerk a qualifying fee in the amount of two per cent (2%) of the annual salary of the office he seeks. Such fee shall thereupon be deposited in the general fund of the city for such use by the city as other monies therein are used and shall not be returned or refunded to the candidate."

2. Section one of the Act limits the application to "cities in this state having populations of not less than 200,000 nor more than 300,000 * * *."

129 So.2d 419 (Fla.1961). Nor will this court hold that a fee of 2% of the salary is arbitrary, unreasonable, or exorbitant. The court notes there are cases holding it is arbitrary to set the fee as a percentage of the annual salary, e. g., Kelso v. Cook, 184 Ind. 173, 110 N.E. 987 (1916). This court is not so persuaded.

Turning now to plaintiff's Fourteenth Amendment claims, the court notes that they fall into two basic categories—due process and equal protection.

■ After considering the plaintiff's due process argument, the court has concluded that it is without merit. The right to hold state office is not a "privilege or immunity" of a citizen of the United States, Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); nor is it "property" within the meaning of the Fourteenth Amendment, Cave v. Missouri, 246 U.S. 650, 38 S.Ct. 334, 62 L.Ed. 921 (1918); Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900).

The plaintiff's equal protection claim is another matter. This court concludes that a statute requiring prospective candidates to pay a fee for having their names put on the ballot MAY be a denial of equal protection of the law.

The practice of extracting qualifying fees is an old one; until recently, however, there was little litigation in federal courts concerning this issue. This is explainable, at least in part, by the comparatively recent growth in importance of the equal protection clause by court decisions. See Developments in the Law—Equal Protection, 82 Harv.L. Rev. 1065 (1969). There has been some litigation in state courts, usually involving state constitutions. E. g. Bodner v. Gray, 129 So.2d 419 (Fla.1961); State ex rel. Thompson v. Scott, 99 Minn. 145, 108 N.W. 828 (1906). Most state courts considering the problem have concluded that filing fees are valid legislative enactments. See Annot., 89 A.L.R.2d 864 (1963) and cases cited therein. These cases do not thoroughly discuss the question in light of the equal protection clause as it has developed in recent years.

■ The court notes at the outset that the right to vote is a fundamental right, Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), and this court holds its corollary, the right to seek public office, is a "fundamental" right, Jenness v. Little, 306 F.Supp. 925 (N.D. Ga.1969). Any state action which discriminates against segments of its population is subject to "strict scrutiny." Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). The state must demonstrate not merely a reasonable justification for the distinction it draws between its citizens, it must show a *compelling* state interest.

The defendant urges, as the state's interest, two considerations. First, it helps defray the cost of the election; and, secondly, it helps insure that only serious candidates run. One additional aspect of the latter consideration is that the ballot be kept at a manageable size. These contentions will be taken up in order.

First, the defendant claims that the fee helps defray the cost of conducting the election. The court notes that much of the developed case law on this point is inapposite here. The contention argued here has been considered by several courts and has generally been approved. See Annot. 89 A.L.R.2d 864, 869–72 (1963). These cases deal with party primaries, whereas the instant case involves a general municipal election. There is more justification for allowing the state, or a party, to require a filing fee to help defray the expense of conducting a primary election, or provide for party expenses, either for the benefit of a political party, than for allowing a levy on the right to run for the office itself. It is not necessary nor appropriate in this case to express a view on the validity of state imposed qualifying fees in primary elections.

This court is unwilling to disregard and repudiate the judgments of many jurists over many years who have considered this question and found qualifying fees the exercise of a legitimate state interest. This view must, however, be considered in the light of present day standards of equal protection.

Defendant's second reason is that by requiring a filing fee, only "serious" candidates will attempt to qualify. Defendant points to several collateral advantages flowing from restricting the ballot to those who are "serious", namely, it will reduce the size of the ballot and will reduce the cost of holding the election because fewer election officials will be needed.

It is not denied that the state has a proper interest in having a ballot of manageable size and in spending tax monies in a reasonable manner—provided constitutional rights are not denied.

There is difficulty in how it is to be determined whether a candidate is serious. Is a "serious" candidate one who is able to expend a good deal of money on his campaign? If so, this is unacceptable as a standard. The wealth of the individual candidate is too cynical a test to be applied to the legitimacy of his effort. A poor man may be as "serious" in his campaign as a wealthy one, and he has the right to seek office with or without a capital outlay.

It is no answer that those candidates without money cannot "seriously" hope to win. It may be that modern politics is such that low budgets lose elections; but, those with low budgets are entitled to try.

The three judge court in Jenness v. Little, supra, noted "It is an old political trick in Georgia, and perhaps elsewhere, to flood the ballot with fictitious candidates bearing the same name as genuine candidates." Politics is a vocation for the hardy and the brave. Tricks and maneuvers are common experiences to all who participate, and the flooding of ballots to beat a particular candidate or help a candidate for purposes foreign to the welfare of the electorate, is to be expected. The flooding of ballots with candidates on voting machines creates mechanical and financial problems in providing adequate and sufficient machines.

The door should not be closed on reasonable, non-arbitrary, or non-exorbitant qualifying fees as an aid to "screening out fictitious and trumped-up candidates" provided such tests that a "candidate can get his name on the ballot in some other fashion, either by nominating petition, primary election, or pauper's affidavit," are met.[3]

Strictly speaking, the plaintiff herein has no standing for the relief she seeks since she does not claim she was unable to pay the qualifying fee. In fact, she presented a check. However, grave constitutional questions have been presented which deserve consideration and discussion.

Therefore, this court joins and follows with approval Jenness v. Little, supra, in holding:

"As a prospective rule of law * * *, and with respect to future City elections, the Court holds that to prohibit candidates from getting their names on the ballot solely because they cannot post a certain amount of money is illegal and unconstitutional."

This court grounds its holding specifically on the Fourteenth Amendment's "equal protection" clause and finds that Act No. 287, Acts of Alabama, Special Session, 1965, Vol. 1, p. 395, is unconstitutional for lacking other means of a candidate getting on the ballot.

This court is not unaware of Wetherington v. Adams, 309 F.Supp. 318 (N.D. Fla.1970), wherein a three judge panel upheld the constitutionality of a Florida filing fee statute. That case is distinguishable from the instant case because the fee involved there was for party primary elections.

3. All quotes are from Jenness v. Little, supra.

■ The only remaining question then, is plaintiff's request that the August 1969 municipal election should be declared void. For several reasons, it should not be. One, the plaintiff has no standing before this court. She did not claim indigency. Two, the filing fee required has historically been considered valid, and it would be unduly disruptive to the orderly functioning of the city government to set aside an election when such a law under which the officers in that government were elected, is later declared invalid. Three, the plaintiff attempted to qualify June 17, 1969. This action was filed some one and one-half months after the election in which she attempted to qualify. "Good administration and common sense demand that the * * * " [4] election under attack be exempt from this ruling.

Costs are taxed against the plaintiff.

4.  Jenness v. Little, supra;  Allen v. St. Bd. of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed. 2d 1 (1969).