**J. B. STONER, Plaintiff,**

v.

**Ben W. FORTSON, Jr., as Secretary of State of the State of Georgia and as a Member of the State Election Board, and Charles H. Kirbo, as Chairman of the Democratic Party of Georgia, Defendants.**

**Civ. A. No. 16271.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 4, 1972.

J. B. Stoner, pro se.

H. Andrew Owen, Jr., Asst. Atty. Gen., Atlanta, Ga., for Fortson, Carter & Bolton.

C. David Vaughn, of King & Spalding, Atlanta, Ga., for Kirbo.

OPINION AND ORDER

Before BELL, Circuit Judge, and MOYE and FREEMAN, District Judges.

PER CURIAM:

This suit challenges Ga.Code Ann. § 34–1013 [1] as unconstitutional in that it exacts qualifying fees from candidates for election in party primaries. The

I. The text of the statute is set out in its entirety as Exhibit A.

complaint, brought as a class action under 42 U.S.C. § 1983, seeks declaratory and injunctive relief with respect to the challenged statute. Jurisdiction is conferred by 28 U.S.C. § 1343, and a three-judge court has been properly convened pursuant to 28 U.S.C. §§ 2282, 2284. The stipulated facts follow.

While it is unclear what class he purports to represent, the plaintiff desires to become a candidate for United States Senator in the Georgia Democratic Primary Election to be held August 8, 1972. He has not yet attempted to qualify as a candidate or to have his name placed upon the primary ballot but intends to do so between May 17, 1972, and June 14, 1972, the period of time during which candidates must qualify. Ga.Code Ann. § 34–1005. Plaintiff is financially able to pay the qualifying fee of $2,150 (five percent of the salary of the office sought) but is unwilling to do so for the alleged reason that he needs to use such money to conduct his campaign. In the event the ruling of this Court leaves him no other alternative, plaintiff, with the help of voters and friends, will pay the qualifying fee to become a candidate in the primary election.

### Procedural Matters

■ Defendants Fortson, Carter and Bolton argue that there is no controversy between plaintiff and themselves since the qualifying fee would be paid to a political party and not to any state officer. It is true that plaintiff's qualifying fee initially would be paid to the State political party. Ga.Code Ann. § 34–1013(b)(1). Under Ga.Code Ann. § 34–1006, however, the party must certify those candidates who qualify for the primary election to the Secretary of State, said certification to be accompanied by 75 percent of the qualifying fees paid by the candidates. The Secretary of State distributes the funds to the State Treasury and to the various counties as prescribed in § 34–1013(c)(2). Thus, while defendant Fortson, as Secretary of State is not the initial recipient of the fees, he is a substantial partner in the ultimate disposition of those fees and his participation is required by state law. In light of these factors, it cannot be gainsaid that both defendant Kirbo, as Chairman of the Democratic Party of Georgia, and defendant Fortson, as Secretary of State, are proper parties defendant in this suit.[2]

It has been stipulated by the parties that plaintiff is financially able to pay the qualifying fee but is unwilling to do so because he needs the funds to finance his campaign. On the basis of this admission, both defendants argue that plaintiff has no standing to challenge the qualifying fee requirement. Though this argument has seldom been raised,[3] it is not without judicial support. In Thomas v. Mims, 317 F.Supp. 179 (S.D. Ala.1970), the Court noted:

Strictly speaking, the plaintiff herein has no standing for the relief she seeks since she does not claim she was unable to pay the qualifying fee. In fact, she presented a check. However, grave constitutional questions have been presented which deserve consideration and discussion.

Defendants also rely upon the emphatic observation by the Supreme Court in Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), that "the candidates in this case affirmatively alleged that they were *unable,* not simply *unwilling,* to pay the assessed fees . . . ." In light of the nature of the interests sought to be protected here, the Court cannot accept defendants' argument that the plaintiff lacks standing to challenge the Georgia statute.

■■ Plaintiff has brought this suit in his capacity as a voter and as a pro-

---

2. At oral argument, it was agreed by the parties that Jimmy Carter, Governor of Georgia, and Arthur Bolton, Attorney General of Georgia, would be dismissed as defendants.

3. In practically all suits in which qualifying fees have been challenged, the plaintiffs have alleged inability to pay the fee.

spective candidate. His challenge to the statute is based, *inter alia,* upon the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Persons challenging statutes on equal protection grounds, of course, must show that the statute discriminates against a cognizable class or group and that they are members of that group. Defendants argue that plaintiff does not fit into either of the two, clearly defined classes heretofore recognized in previous qualifying fee cases: those who are indigent and those who are not. The Court is convinced, however, that the interests sought to be protected here cannot be classified simply by reference to clearly defined segments of the population or classes of voters and candidates. There is no question that the substantial qualifying fee required by the Georgia statute has an exclusionary character. It discriminates against some candidates, as well as voters, to a greater or lesser degree, depending upon their economic status. That the interests involved here do not lend themselves to precise categorization is apparent from the Supreme Court's discussion, in Bullock v. Carter, *supra,* of what "equal protection test" to apply in that case:

" . . . To the extent that the system requires candidates to rely on contributions from voters in order to pay the assessments, a phenomenon which can hardly be rare in light of the size of the fees, it tends to deny some voters the opportunity to vote for a candidate of their choosing; at the same time it gives the affluent the power to place on the ballot their own names or the names of persons they favor. Appellants do not dispute that this is endemic to the system. *This disparity in voting power based on wealth cannot be described by refer-*

*ence to discrete and precisely defined segments of the community as is typical of inequities challenged under the Equal Protection Clause,* and there are doubtless some instances of candidates representing the views of voters of modest means who are able to pay the required fee. *But we would ignore reality were we not to recognize that this system falls with unequal weight on voters, as well as candidates, according to their economic status."* [Emphasis added.]

On the basis of plaintiff's representations that (1) he "cannot afford" the qualifying fee or is "unwilling" to pay the fee for the reason that "he needs to use his campaign money to pay for the cost of conducting his campaign," and (2) "In the event that the Court's ruling in this case leaves him no other alternative, plaintiff, *with the help of voters who are friends of plaintiff,* will pay said qualifying fee to become a candidate in said primary election" [emphasis added], the Court holds that plaintiff has standing to challenge the Georgia statute.[4]

### The Merits

As the Supreme Court found with respect to the Texas statute in Bullock v. Carter, *supra,* this Court has no question but that the Georgia qualifying fee statute "has a real and appreciable impact on the exercise of the franchise" and that this impact is "related to the resources of the voters supporting a particular candidate." *Id.* Accordingly, the statute must be closely scrutinized and "found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." *Id.;* Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966). The defendants offer three justifications for

---

4. The Supreme Court's reference to the inability as opposed to the unwillingness of the candidates to pay in *Bullock* was made in the context of the Court's discussion of the State's argument that the fee requirement limited the ballot to serious candidates. That factor, in this Court's opinion, was not decisive of the case and, in light of other language in *Bullock,* does not deprive the plaintiff here of standing to challenge the Georgia statute.

the imposition of the fee: (1) to provide a means for defraying the costs of financing primary elections; (2) to regulate the number of candidates on the ballot; and (3) to limit the ballot to serious candidates. Each of these objectives constitutes a legitimate state interest. Bullock v. Carter, *supra.* It has not been shown, however, that the use of a qualifying fee is reasonably necessary to the accomplishment of these goals. As to the State's desire to regulate the ballot and to limit the ballot to serious candidates, the existence of other means to protect these legitimate interests— use of voters' petitions, for example— militates against a finding that qualifying fees are *necessary* to achieve these goals. In fact, with respect to the State's "serious candidates" argument, the Court has difficulty in finding even a rational basis for the qualifying fee requirement.

Similarly, the Court rejects the State's argument that use of the qualifying fee is necessary to defray the costs of conducting primary elections. First, there has been no connection shown between the cost of the election and the amount of the fees imposed. Second, there has been no connection shown between the fee imposed upon any one candidate and the election costs attributable to his particular candidacy. Finally, and more significantly, there is strong indication in Bullock v. Carter, *supra,* that the major portion of primary election costs should not be imposed upon the candidates, solely because of their candidacy:

"It seems appropriate that a primary system designed to give the voters some influence at the nominating stage should spread the cost among all of the voters in an attempt to distribute the influence without regard to wealth." *Id.*

Since the State has not shown that the imposition of qualifying fees is reasonably necessary to the accomplishment of any legitimate state objectives, the Georgia statute which requires the payment of such fee is in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and is thereby unconstitutional. The Court does not mean to infer that the State or a political party could not impose other requirements of prospective candidates so long as those requirements would not depend upon the economic status of the candidates or the financial resources of the voters or otherwise be so burdensome as to have a discriminatory effect. Neither does the Court wish to infer that the State or a political party could not impose, upon prospective candidates, a *filing* fee the amount of which reasonably approximates the cost of actually processing a candidate's application for a place on the ballot. See Bullock v. Carter, *supra* at n. 29.

In conclusion, the Court hereby declares Georgia Laws 1970, pp. 347, 366 (Ga.Code § 34–1013) to be unconstitutional, and defendants are enjoined from enforcing said statute. As an integral part of the Georgia election machinery has been invalidated by this order, and as the time for qualifying is in the immediate future, this Court is compelled to consider what provisional measures, if any, must be implemented to insure that the exercise of the franchise is adequately protected in the upcoming elections. Accordingly, within three days of the filing of this order, defendants are directed to submit to the Court their proposals as to what requirements should be imposed upon prospective candidates in the 1972 primary elections, said requirements, of course, to be consistent with the terms of this order.

So ordered, this 4th day of May, 1972.

### EXHIBIT "A"

Ga.Code Ann. § 34–1013:

Qualification fees; when and to whom paid, distribution of fees.—(a) Qualification fees for party and public offices shall be fixed and published as follows: (1) The governing authority of any county, not later than March 1 in any year in which a general primary or election is to be held (except that in the

year 1970 such date shall be April 1), and at least 20 days prior to the election in the case of a special election, shall fix and publish a qualifying fee for each county or militia district office to be filled in the upcoming primary or election. Such fee shall be five per cent. of the annual salary of the office if a salaried office. If not a salaried office, a reasonable fee shall be set by the county governing authority, such fee not to exceed five per cent. of the income derived from such office by the person holding the office for the preceding year, except that the fee for the office of justice of the peace shall be $10.

(2) Within the same time limitation, the Secretary of State shall fix and publish a qualifying fee to be paid by each candidate qualifying for a primary with a State political party and each non-primary candidate filing with the Secretary of State his notice of candidacy for the general or special election. Such fee shall be five per cent. of the annual salary of the office if a salaried office, except that the fee for members of the General Assembly shall be $400. If not a salaried office, a reasonable fee shall be set by the Secretary of State, such fee not to exceed five per cent. of the income derived from such office by the person holding the office for the preceding year.

(3) A reasonable qualifying fee may be set according to party rule for each party office to be filled in a primary. Such fees shall be set and published by the county or State political party not later than March 1 of the year in which the primary is to be held for the filling of such party office (except that in the year 1970 the date shall be April 1).

(b) Qualifying fees shall be paid as follows:

(1) The qualifying fee for a candidate in a primary shall be paid to the county or State political party at the time the candidate qualifies;

(2) The qualifying fee for all other candidates shall be paid to the ordinary or Secretary of State at the time the notice of candidacy is filed by the candidate.

(c) Qualifying fees shall be pro-rated and distributed as follows:

(1) Fees paid to the county political party: 25 per cent. to be retained by the county political party with which the candidate qualified; 75 per cent. to be transmitted to the ordinary of the county with the party's certified list of candidates not later than noon of the third Wednesday in June in the case of a general primary, and by noon of the day following the closing of qualifications in the case of a special primary. Such fees shall be transmitted as soon as practicable by the ordinary to the governing authority of the county, to be applied toward the cost of the primary and election.

(2) Fees paid to the State political party: 25 per cent. to be retained by the State political party; 75 per cent. to be transmitted to the Secretary of State with the party's certified list of candidates not later than noon of the third Wednesday in June in the case of a general primary, and by noon of the day following the closing of qualifications in the case of a special primary. Such fees shall be transmitted as soon as practicable by the Secretary of State as follows: one-third to the State treasury, and two-thirds to the governing authority of the county or counties in the district in which the candidate runs, such fees to be applied toward the cost of holding the primary and election. If the office sought by the candidate is filled by the vote of electors of more than one county, then such fee shall be divided among the counties involved in proportion to the vote cast by each county in the preceding presidential election.

(3) Qualification fees paid to the ordinary of the county shall be transmitted by the ordinary as soon as practicable to the general fund of the governing authority of the county, to be applied toward the cost of holding the election.

(4) Qualification fees paid to the Secretary of State shall be pro-rated and

distributed as follows: 25 per cent. to be transmitted to the State treasury; 75 per cent. to be transmitted to the governing authority of the county or counties in the district in which the candidate runs, such fees to be applied toward the payment of the cost of holding the election. If the office sought by the candidate is filled by the vote of electors of more than one county, then such fee shall be divided among the counties involved in proportion to the vote cast by each county in the preceding presidential election.

(Acts 1970, pp. 347, 366.)

## ORDER

The import of our prior opinion in this matter was two-fold. First, a method of qualifying as a candidate in the primary elections must be provided as an alternative to the payment of fees. Second, the present fee schedule is excessive when considered in light of some of the statements of the Supreme Court in Bullock v. Carter, 405 U.S. 134, 92 S. Ct. 849, 31 L.Ed.2d 92.

We directed the parties to suggest interim methods for qualifying in the 1972 primaries which would meet federal constitutional standards. Our purpose was to make provision for the 1972 primaries by court order pending the promulgation by the state of new rules and regulations for qualifying.

The state and the Democratic Party have suggested that the present fee schedule be continued. They have also suggested a qualifying petition signed by registered voters as an alternative means of qualifying. The petition would be signed by a number of registered voters not less than three per cent of the votes cast in the last election for the office the candidate is seeking with a minimum requirement of 100 registered voters but in no event more than 10,000 depending on the office.

Plaintiff Stoner has suggested that qualifying fees exceeding two per cent of the annual salary of the office sought would be excessive. His view as to qualifying petitions is that the requirement should in no event be in excess of 100 registered voters.

Our problem in setting interim standards is principally a lack of evidence. What are reasonable fees within the contemplation of Bullock v. Carter? The Supreme Court specifically noted that its opinion was not "intended to cast doubt on the validity of reasonable candidate filing fees . . . " 405 U.S. at 149, 92 S.Ct. at 859, 31 L.Ed.2d at 103. Compare Jenness v. Fortson, 1971, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554, on the difference in requirements for qualifying as between primary and general elections and the reasons supporting the differences. Also, what is a reasonable alternative to fees?

We know from the affidavit of Secretary of State Fortson that the expense to the state of processing qualifying petitions under the alternative means provided for qualifying in general elections is inordinate, and much in excess of the fees presently charged for qualifying in primary elections. We know also from the statute, Georgia Code Annotated § 34-1013, that the General Assembly departed from the five per cent of annual salary standard with respect to their own offices and set a flat fee of $400 for qualifying in the primaries for election to the state legislature. Many of the legislative districts include more than one county. The statute also contains a legislative judgment setting the qualifying fee for the office of justice of the peace at $10.00. Thus these figures represent legislative judgments as to reasonable fees which we may consider.

Moreover, a three-judge federal district court decided that the Alabama qualifying fee schedule of up to two per cent of salary ($850.00 for senate race), as compared to the Georgia five per cent scale, was reasonable and valid. Harper v. Vance, 342 F.Supp. 136 (N.D.Ala. 1972). That court did require that an alternative means of qualifying be provided for those unable to pay the fees.

The three-judge district court in Texas which gave effect to Bullock v. Carter, authorized the state election officials to set rules and regulations commensurate with the holding of the Supreme Court in that case. Qualifying fees were thereafter set in range with a maximum of $400.00. An alternative method of qualifying by petition with requirements ranging up to signatures of 2,500 registered voters was also set. Johnston v. Bullock, N.D.Texas, Civil Action No. 3–5373–C.

Taking a somewhat similar view, we hold that state primary elections in Georgia for 1972 may be conducted on rules and regulations to be promulgated by defendant Fortson within the following frame of reference:

(1) Qualifying fees ranging up to a maximum of $850.00 for state wide offices with appropriate gradation downward reflecting the lesser geographical scope of other offices;

(2) as an alternative means of qualifying, qualifying petitions to be signed by registered voters totalling three per cent of the number of votes cast in the last election for the office sought with a minimum of 100 registered voters and a maximum of 2,000 for state wide offices with similar gradation downward from 2,000 for offices of lesser geographic scope;

(3) as a further alternative, qualifying may be by an affidavit of poverty which shows financial condition and that the affiant's financial condition prevents both the payment of a qualifying fee and the use of the alternative petition method of qualifying.

Our order of May 4, 1972 declaring Georgia Code § 34–1013 unconstitutional is, upon reconsideration, limited to the fee scale set out in paragraph (2) thereof which is applicable to candidates qualifying for a primary with a state political party. We do not perceive that the thrust of plaintiff's case goes beyond this and he has represented to the court that the class he represents is so limited.

It is so ordered.