Hunter BYNUM, Appellant,

v.

T. I. BURNS, Sr.,[1] Jimmy Best, Jr., and Sandy Tolson Taliaferro, Members of the Lincoln County Election Commission, Appellees.

No. 18704.

United States Court of Appeals
Eighth Circuit.

June 22, 1967.

John W. Walker, Little Rock, Ark., for appellant. Jack Greenberg and Fred Wallace, New York City, with him on the brief.

R. D. Smith, III, Asst. Atty. Gen., Little Rock, Ark., for appellees. Joe Purcell, Atty. Gen. of Arkansas, Little Rock, Ark., with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Arkansas refusing to grant an injunction requiring the members of the Lincoln County Election Commission of Lincoln County, Arkansas, to certify plaintiff as a bona fide candidate for position #3, Justice of the Peace of Gould Township, for the November 8, 1966, election.

The appellant Hunter Bynum is a Negro, 73 years of age, with an eighth grade education. He sought to file his petition as an independent candidate for the Justice of the Peace, position #3, in the Township of Gould, Lincoln County, Arkansas, on September 24, 1966, the last day for filing for the then ensuing general election.

Negroes, though a majority in the township, comprising about 62 per cent of the voting population, have not had one of their race occupy an elective office

---

1. The record is ambiguous on Burns' name. The title page of the printed record lists him as T. I. Burns, Sr., the record on his appearance as a witness as W. V. Burns, Sr., the appellant's brief as T. I. Burns, Jr., the appellees' brief as T. I. Burns, Jr., and the appellant's reply brief as T. I. Burns, Sr.

within the memory of the parties. In 1964 two Negro citizens did stand for public office but were not elected. In an attempt to overcome the alleged hesitation Negro citizens in the community had to run for public office, Bynum together with a Mrs. Carrie Dillworth attempted to qualify as independent candidates in the 1966 general election. Mrs. Dillworth attempted to qualify as a candidate for Mayor of the city of Gould by filing her petition on September 23, 1966 and paying the statutory $1 tax required of candidates. She was instrumental in interesting Bynum to file for the Justice of the Peace position. While she is not a party to this action, it is necessary to bring her into the picture as her actions, in an attempt to qualify as a candidate, are intertwined with that of the appellant, Bynum.

Under the Arkansas Statutes a person may file as an independent candidate by petition containing a required number of signatures of electors, Ark.Stat.Ann. (1947), § 3–261 and § 3–837, which petition must be filed with the Election Commissioners of the County, Ark.Stat.Ann. (1947), § 3–263 within certain time limitations under § 3–264 and any certificate of nomination under Ark.Stat.Ann. (1947), § 3–261(g) must be "accompanied by the receipt of the treasurer or collector of each County in which any candidate is to be voted for" in the amount of $1.00. There are other applicable sections that pertain to the certification by the Election Commissioners of names to be placed on the ballot and a state procedure provided by Ark.Stat. Ann. (1947), § 3–814 to correct any error or omission in the publication of names or descriptions of candidates for office.

Mrs. Dillworth in pursuit of her mayoralty candidacy took her petition to the County Clerk's office in Star City, Arkansas, the county seat of Lincoln County. The County Clerk, who apparently has no official duties in regard to qualifying candidates for office or issuing tax receipts, was not in his office, but one of his deputies said she did not know anything about it and referred Mrs.

Dillworth to a Mr. Burns, who was Chairman of the Lincoln County Election Commission. Mrs. Dillworth found Mr. Burns at his job on a house-building project, stated her mission to him and was told by him that she first must pay the statutory filing fee (of $1) before she could file her petition. The record is not clear as to the actual directions given but Burns testified: "I told her if I wasn't mistaken that she should pay her filing fee to her City Treasurer in Gould;", and when she responded that since this was the County Seat, she thought it would be all right to pay it in Star City, "I told her that I wasn't sure about this, but to go and check with our City Treasurer and he could advise her whether to or not to take her money for a receipt." Mrs. Dillworth then proceeded to the office of John Carter, City Treasurer of Star City, and after some discussion or argument about his office being the proper place to file, Carter did accept the money for the filing fee and wrote her a receipt. Her petition of nomination and receipt were then accepted for filing by Mr. Burns.

On Saturday, September 24, 1966, Bynum, accompanied by Mrs. Dillworth, went to the County Clerk's office in Star City with his petition, seeking to qualify for the Justice of the Peace, position #3, and found the County Clerk's office closed. They then proceeded to Mr. Burns' home, where Burns told Bynum. "that he hadn't paid his filing fee and that he should have paid it in Gould to the City Treasurer" and sent them to see Carter, the City Treasurer of Star City, again. This they did, paid the fee and returned the petition with the receipt to Burns. Bynum should have paid his $1 fee to the County Treasurer instead of the City Treasurer, since the Justice of the Peace is a township position and also Mrs. Dillworth should have paid her fee to the City Treasurer of Gould instead of Star City.

On September 29, 1966 the County Election Commissioners met to certify candidates and found that Bynum had

not paid his filing fee or nominee tax in the proper office and, therefore, held that he had not qualified under the Arkansas Statutes to be certified as a candidate. A like finding was made as to Mrs. Dillworth. On the same day a letter was written by appellee Best, a member of the Lincoln County Election Commission, informing Bynum of this action and that his name would not appear on the ballot.

Although the record is incomplete, apparently no other person had qualified as a regular candidate for the Justice of the Peace position #3 for the general election to be held November 8, 1966. Bynum did qualify as a write-in candidate along with some other person not named in the record or joined in this suit. Bynum lost his write-in candidacy to the other write-in candidate. Before the general election, however, Bynum filed this complaint for injunctive relief on October 20, 1966. The matter was heard expeditiously by the District Court on October 28, 1966 and injunctive relief denied.

The District Court in an oral opinion from the bench noted probable jurisdiction since racial discrimination was alleged, stated a reluctance to interfere in the election processes of the State, noted that no attempt was made to seek relief in the State Court, and found that plaintiff had not shown diligence in vindicating his right. The District Judge further said that he was not convinced that the action taken by Burns, Chairman of the Election Commission, amounted to more than negligence and a disregard for the interest of the plaintiff and found that the record did not support an unconditional and unqualified statement that

Burns advised Bynum to pay the fee to Carter, the City Treasurer. The District Judge then admonished the election officials against giving advice on election matters and told Bynum that a person seeking to file for office should secure his own attorney's advice. Further the Court indicated that it was not convinced with the requisite degree of certainty that this election "Commission had willfully and intentionally caused this plaintiff to fail to be on the ballot."

Bynum filed a timely appeal from the order of the District Court entered on October 31, 1966. Bynum is now requesting this Court to void the election for the Justice of the Peace position #3 for Gould Township and order a new election since, of course, it would be impossible to comply with the original request of Bynum to have his name printed on the ballot as a properly qualified independent candidate for the November 8, 1966 election.

■ We note at the onset that this is an election matter pertaining solely to state office and would not ordinarily be covered by the Equal Protection Clause, Due Process Clause or Privileges and Immunities Clause of § 1, Fourteenth Amendment of the United States Constitution,[2] unless the Court could, as alleged, find that Bynum was deprived of his right to run for local office because of his race. Admittedly Bynum did not follow the state procedure specified for qualifying as an independent candidate for the Justice of the Peace, position # 3; nor did the Election Commissioners have any authority to waive any of the statutory requirements. All people of

2. In Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) a candidate for Illinois State Legislature, was denied damages for alleged violation by the State Primary Canvassing Board of the Fourteenth Amendment's guarantees of non-abridgment of privileges or immunities, due process and equal protection of the laws, together with two sections of the Civil Rights Act of 1871, 8 U.S.C. §§ 43, 47. The Court held that the right to become a candidate for state office is a right of state citizenship, not na-

tional, and reaffirmed Taylor & Marshal v. Beckman, 178 U.S. 548, 20 S.Ct. 1009, 44 L.Ed. 1187, holding unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the Due Process Clause. However, in *Snowden* there was no contention of class or racial discrimination, as is here alleged by Bynum. (Current citation to the Civil Rights Act is 42 U.S.C. § 1983 and § 1985.)

the state have an interest in the proper procedures being observed by state and local officials. There is nothing in the record to indicate that Bynum was treated differently than any other citizen would have been treated under the same or similar circumstances. There is no showing that other candidates who paid their statutory filing fee in the wrong place had their names placed on the ballot. The record discloses that the attorneys themselves were uncertain at the time of trial as to just where the $1 fee should be paid and it is certainly reasonable to hold with the District Court that persons seeking to qualify for office should abide by the statutory requirements, secure their own counsel in case of doubt, and not place the entire burden on elective officials who serve in part time capacities to clearly delineate legal requirements. Therefore, absent a showing of discriminatory activity by state officials, appellant has not established jurisdiction allowing the federal courts to act.

This record is not clear but indicates that Burns, the Chairman of the Election Commission, did not know for sure where the appellant should file but directed him to Carter, the City Treasurer, for advice. Actually it was incumbent upon Bynum to secure the $1 receipt before presenting his nominating petition to the Election Commission. The statute appears clear enough on its face. Ark. Stat.Ann. (1947), § 3–261(g) states that the certificates of nomination for township offices shall be accompanied by the receipt of the Treasurer or Collector of that county, but there is no showing that this was a common practice, was an often used procedure, or that Bynum was intentionally misled by Burns, Chairman of the Election Commission. We think Burns was at fault in not advising the other members of the Election Commission at their certification meeting of September 29, 1966 that he had at least suggested to Bynum or to Bynum's mentor, Mrs. Dillworth, that they see Carter, the Treasurer of Star City, for the purpose of either paying their $1

tax to him or securing proper information as to whom the same should be paid. However, the whole burden cannot be placed on Burns' shoulders on the basis of the present incomplete record. The question of substantial compliance urged by Bynum or unreasonable conduct by the Election Board presents state issues. Absent a showing of violation of a federal right, federal courts may not adjudicate these questions of local law.

Obviously the relief requested by the extraordinary remedy of injunction cannot now be granted and the mere recital in the prayer of plaintiff's complaint for such other additional or alternative relief as appears to be equitable does not preserve this issue for decision under the circumstances of this case. The Supreme Court in the leading case of Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895) long ago enunciated the principle: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."

In *Mills* the petitioner alleged that he was unconstitutionally deprived of his right to register as a voter for a Constitution Convention election in South Carolina. The time for the election had passed when petitioner appealed to the Supreme Court from the adverse ruling of the Circuit Court of Appeals, and the appeal was dismissed by the Supreme Court as "no relief within the scope of the bill could now be granted."

The Supreme Court in Southern Pacific Terminal Company v. Interstate Commerce Commission, 219 U.S. 498, 514, 31 S.Ct. 279, 55 L.Ed. 310 (1911) reiterated the general principle on refusing to rule on moot issues but noted also the exceptions to the Rule:

"This court has said a number of times that it will only decide actual controversies, and if, pending on appeal, something occurs without any

fault of the defendant which renders it impossible, if our decision should be in favor of the plaintiff, to grant him effectual relief, the appeal will be dismissed. Jones v. Montague, 194 U.S. 147 [48 L.Ed. 913, 24 Sup.Ct.Rep. 611] and Richardson v. McChesney, decided November 28 of this term, 218 U.S. 487 [54 L.Ed. 1121, 31 Sup.Ct.Rep. 43]. But in those cases the acts sought to be enjoined had been completely executed, and there was nothing that the judgment of the court, if the suits had been entertained, could have affected. The case at bar comes within the rule announced in United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 308 [41 L.Ed. 1007, 1016, 17 Sup.Ct.Rep. 540] and Boise City Irr. & Land Co. v. Clark (C.C.App. 9 Cir.), [65 C.C.A. 399] 131 Fed. 415."

■ Bynum was requesting extraordinary relief to have his name placed on the ballot for the November 8, 1966 election. The 1966 election is, of course, past and nothing we could do can alter the transpiring of events. Bynum's original complaint specifically sought injunctive relief relative to the November 1966 election and not damages for any alleged constitutional deprivation. On the principle of mootness, the courts have uniformly followed the leading *Mills* case. We recognize the exceptions to the general principle of *Mills*. The courts will rule on moot issues in matters of public interest as recognized in United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540 (1897) (an alleged illegal freight rate agreement), or as in Southern Pacific Terminal Company v. Interstate Commerce Commission, supra, (an expired ICC order that was capable of being reinstated), and Southern Pacific Company v. Interstate Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283 (1911) (where an element of monetary liability for reparation remained). However, the case at bar does not fall within the exceptions to the general rule and is thus governed by the general principle as announced in *Mills*.

Another election case, Colpo v. Highway Truck Drivers and Helpers, Local 107, 305 F.2d 362 (3 Cir. 1962), cert. denied 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123, concerning a union office, held that an appeal after the election presented a moot question which would not be decided by the court. The per curiam opinion noted at 363:

"Our jurisdiction is limited to cases and controversies involving real and substantial rights of the parties. We think once the election here was held, there was no longer before this court a subject matter upon which our judgment could operate, Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895), and the question became moot. Our opinion thus would be advisory and of no immediate consequence to the parties."

For other cases denying post election relief because of mootness, see Fair v. Dekle, 367 F.2d 377 (5 Cir. 1966); Munoz v. Amador, 340 F.2d 590 (5 Cir. 1965). For cases granting post election relief see, Hamer v. Campbell, 358 F.2d 215 (5 Cir. 1966), cert. denied 385 U.S. 851, 87 S.Ct. 76, 17 L.Ed.2d 79 and Bell v. Southwell, 376 F.2d 659 (5 Cir. 1967).

Of course, under certain circumstances, upon proof of unconstitutional discrimination, the court has the inherent equitable powers to order an election set aside and require a new election. However, even in an equitable proceeding, the court may not act when all the parties affected are not before the court or are not given the opportunity to be heard. In this particular case whoever was elected to office of the Justice of the Peace #3 is not a party and there might be other parties who would be adversely affected if that position were held to be invalidly filled in the November 8, 1966 election.

■ It, therefore, appears, absent the merits of appellant's contentions, that there is no action that this court could or should take upon the moot issue of in effect certifying appellant as a can-

234

didate for the Justice of the Peace in the November 1966 election, and that on the broader issue of now attempting to void such an election, this Court should not proceed to consider equitable issues without having before it all of the parties who would be directly affected by an adverse decision.

The judgment is affirmed.