Van Phillip **CARTER**

v.

Martin **DIES**, Jr. and Dr. Elmer C. Baum.

Theodore H. **WISCHKAEMPER** on Behalf of Himself and all others Similarly Situated

v.

Robert L. **WRIGHT**, Chairman of the Tarrant County Democratic Executive Committee, et al., Reubin Jenkins, Intervenor.

William **PATE**, on Behalf of Himself and all others Similarly Situated,

v.

George A. **McALMON**, Jr., as Chairman of the County Democratic Executive Committee of El Paso County, Texas and individually and the County Democratic Executive Committee of El Paso County, Texas and the Primary Committee, Carlos Guzman, Luz A. Lozano, Andrea L. Sifuentes and Manuel Sapien, on Behalf of Themselves and all others Similarly Situated, and as members of U.N.I.O.N., Incorporated, Intervenors.

Civ. A. Nos. 3–3635–C, 3–3733–C, 3–3739–C.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 21, 1970.

H. Averil Sweitzer, Dallas, Tex., for Van Phillip Carter.

Charles F. Herring, Small, Herring, Craig, Werkenthin & Shannon, Austin, Tex., for Dr. Elmer Baum.

William J. Craig, Asst. Atty. Gen., Austin, Tex., Crawford C. Martin, Atty. Gen., for the United States.

A. L. Crouch, Fort Worth, Tex., for Theodore H. Wischkaemper.

Thomas H. Law, Fort Worth, Tex., for Robert L. Wright, Chairman of Tarrant County Demo. Exec. Committee.

Estil Vance, Jr., Fort Worth, Tex., for Dr. J. D. Tomme, Jr.

A. L. Crouch, Fort Worth, Tex., for Reubin Jenkins, Intervenor.

John L. Fashing, Calamia & Fashing, El Paso, Tex., for William Pate.

Mark F. Howell, El Paso, Tex., for George A. McAlmon, Jr., and others.

Before THORNBERRY, Circuit Judge, and HUGHES and TAYLOR, District Judges.

WILLIAM M. TAYLOR, Jr., District Judge.

In the above cases, the plaintiffs seek an injunction to restrain the enforcement of Tex.Election Code Ann. Arts. 13.07a, 13.08, 13.08a, 13.15, and 13.16, V.A.T.S. (1967) [1] and to have them declared unconstitutional.

---

1. Art. 13.07a provides that a candidate for a state office must pay a deposit of $50.00 to the county chairman at the time he applies for a place on the ballot.

Art. 13.08 authorizes the county committee to make an assessment of the costs of running the primary and to apportion the cost in such a manner as in their judgment is just and equitable among the various candidates except for certain offices such as state senator and representative. "In making the assessment upon any candidate, the committee shall give due consideration to the importance, emolument, and term of office for which the nomination is to be made."

Art. 13.08a provides for the maximum allowable assessments that can be made by the committees in counties according to the population.

Arts. 13.15 and 13.16 regulate the filing fees for certain statewide offices.

These articles require candidates to pay filing fees as a condition to having their names placed on a ballot in a primary election.

The parties have stipulated that Plaintiff William Pate meets all qualifications to be a candidate in the Democratic Primary Elections for the office of County Commissioner of Precinct Four for El Paso County, Texas, except that he cannot pay the $50.00 deposit nor the $1424.00 assessment. Likewise, Plaintiff Theodore Wischkaemper meets all of the qualifications for County Judge of Tarrant County, Texas, except that he has not paid the $6,300.00 assessment fee.

Plaintiff Carter's application to be placed on the ballot for the office of Commissioner of the General Land Office was denied by the State Democratic Executive Committee because it was not notarized,[2] it was not accompanied by a filing fee,[3] and it was not accompanied by a notarized loyalty affidavit.[4]

■ In addition to the plaintiffs, Reubin Jenkins has been allowed to intervene as a voter who wished to vote for plaintiff Wischkaemper and Carlos Guzman, et al. have asked to be allowed to intervene as voters who desired to vote for Plaintiff Pate. The latter will be allowed to intervene. Fed.R.Civ.P. 24(a)(2).

Plaintiffs claim that the filing fees deprive them of their right to run for office in violation of the due process and equal protection clauses of the Fourteenth Amendment because they cannot afford to pay the required fees. Intervenors claim that the filing fees deprive them of their right to vote for a candidate of their own choice in violation of the same sections of the Constitution. Specifically, it is alleged that the assessments are (1) exorbitant, arbitrary, capricious, irrelevant, unreasonable, outrageously high, (2) without any rea-

sonable relation to any legitimate legislative purpose and not germane to one's ability to participate intelligently in the electoral process, and (3) discriminatory, in that some offices are assessed higher amounts than others.

A three-judge court was convened on April 3, 1970 in accordance with 28 U.S.C. § 2281 to hear the Plaintiffs' request for a preliminary injunction. The court allowed the names of Plaintiffs Pate and Wischkaemper to be placed upon the ballot without the payment of any fee. No fee would have to ever be paid if, on final determination of the merits, their claims are accepted by the court; but, should the court reject their claims, they would then be required to pay the challenged fees. Relief was denied as to Plaintiff Carter because he has not complied with filing requirements unrelated to filing fees and assessments. Neither Pate nor Wischkaemper won in their respective primary.

All plaintiffs have stated that they intend to become candidates for state office at the next election period. Even though Plaintiff Carter has failed to meet other requirements in addition to not paying the filing fee, the court need not pass upon his claim because the relief he seeks is the same as that sought by Plaintiffs Pate and Wischkaemper.

It is undisputed that primary elections of political parties are state action and subject to the Fourteenth Amendment. Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944).

Since the rights of the intervenors as voters will be determinative of the constitutionality of the laws here attacked, we deem it unnecessary to discuss the rights of the candidates.

The right to vote was defined as a "fundamental political right" in Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In more recent times the court has said,

2. Tex.Election Code Ann. Art. 13.12 (1967).

3. Tex.Election Code Ann. Art. 13.08 (1967).

4. Tex.Election Code Ann. Art. 6.02 (1967).

Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. Reynolds v. Sims, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964).

The *Reynolds* court went further in describing the right to vote, saying it included the right to cast one's vote effectively.[5] The effectiveness of the vote there was quantitative in that it was an apportionment case. In Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the right to cast one's vote effectively was again discussed. The effectiveness of the vote in that case was qualitative in nature rather than quantitative in that the voters were desirous of voting for a specific candidate who espoused their political beliefs.

■ The right to choose one's candidate is not only a fundamental political right protected by the Fourteenth Amendment, it encompasses the First Amendment right "to associate for the advancement of political beliefs." Williams v. Rhodes, supra.

■■ Whenever a First Amendment right is encumbered by the state, the burden is on the state to show that such infringement is necessary to support a compelling state interest.[6] The primary purpose of the filing fee assessments under the Texas statutory scheme is to raise revenue. Campbell v. Davenport, 362 F.2d 624 (5th Cir. 1966). This "tax" is used by the party to cover the cost of the primary. All monies collected in excess of the cost of the primary are refunded to the candidate.

■ In order to qualify as a compelling state interest, the law must be shown to be "necessary, and not merely rationally related, to the accomplishment of a permissible state policy." McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222, 290–291 (1964). The collection of revenue is, of course, a permissible and legitimate interest but under these circumstances not a compelling state interest. These assessments are not necessary to insure the collection of revenue. Approximately eighteen states do not require candidates to pay any filing fees to support the primary.[7] The State of Texas has been able to find other

5. "Full and effective participation by all citizens in state government requires, therefore, that each citizen have an equally effective voice in the election of members of his state legislature. Modern and viable state government needs, and the Constitution demands, no less." 377 U.S. at 565, 84 S.Ct. at 1383.

6. "The presumption of constitutionality and the approval given 'rational' classifications in other types of enactments are based on as assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality." Kramer v. Union Free School District, 395 U.S. 621, 628, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969).

"[T]he right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot. In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.

"The State has here failed to show any 'compelling interest' which justifies imposing such heavy burdens on the right to vote and to associate." Williams v. Rhodes, 393 U.S., at 31, 89 S.Ct., at 11. See "The Supreme Court, 1968 Term," 83 Harv.L.Rev. 60, 93, n. 30 (1969).

7. Colorado, Indiana, Iowa, Illinois, Kansas, Kentucky, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, New York. North Dakota, Oregon, Rhode Island, South Dakota, Tennessee and Vermont.

adequate means of collecting revenue which do not restrict the right to vote.[8] United States v. State of Texas, 252 F. Supp. 234, 252 (W.D.Tex.1966).

■ By requiring this "tax" in the form of primary filing fees, the State of Texas has in effect imposed a wealth requirement directly upon the candidates and the voters they seek to represent. A standard of wealth has never been considered as relevant to one's intelligent participation in the electoral process. As the Supreme Court said in Harper v. Virginia State Board of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 1081–1082, 16 L.Ed.2d 169 (1966),

We conclude that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard. Voter qualifications have no relation to wealth nor to paying or not paying this or any other tax. * * *

\* \* \* \* \* \*

But we must remember that the interest of the State, when it comes to voting, is limited to the power to fix qualifications. Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process.

■ The Court does not mean to imply that there is no compelling interest, pursuant to which the State may require a primary filing fee. We have limited our decision here to say that a filing fee violates the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment when it is used as a revenue collecting device or when made an absolute qualification in order for a candidate to get his name on the ballot. Indeed, there may be other compelling interests which would justify some type of reasonable fee. The *Williams* court recognized that the State could have a compelling interest in regulating the ballot.[9]

■ In determining whether the State's interest in exacting a filing fee is sufficiently compelling, "we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." Williams v. Rhodes, supra, 393 U.S. p. 30, 89 S.Ct. p. 10. Here the high fees charged, in the thousands of dollars, for revenue purposes is not a sufficient state interest when compared to the burden it places on the voters and their candidates. A "write-in" alternative would not bring about the needed balance on the "individual-state interest" scale and make these fees any more palatable. Williams v. Rhodes, *supra,* and Jenness v. Little, *supra.*

The Court is aware of the fact that in Wetherington v. Adams, *supra,* filing fees for a primary election were upheld as constitutional. The plaintiff in that case was a candidate and the issues were decided on the basis of what were his rights vis-a-vis those of the state. While neither approving nor disapproving of the reasoning used or the results reached, we need only say that in

---

8. The Secretary of State has already presented to the House Interim Committee on Elections proposed election law changes. It recognizes the exorbitant filing fees assessed in some counties and the unworkability of the present system in the future. It recommends that the primary expenses be borne not only by the candidate, but also by the county and state. Office of the Secretary of State, Proposed Election Law Changes, A Report to the 62nd Legislature of the State of Texas, December 10, 1970.

9. Wetherington v. Adams, 309 F.Supp. 318 (N.D.Fla., 1970) recognized this interest as a justification for a primary filing fee.

Jenness v. Little, 306 F.Supp. 925 (N. D.Ga., 1969) appeal dismissed Matthews v. Little, 397 U.S. 94, 90 S.Ct. 820, 25 L.Ed.2d 81 (1970), also recognized this as a legitimate and possibly compelling state interest. However, the court there said that it could not be an absolute qualification. If used for this purpose, there should be some alternative provided. A pauper's affidavit and a supporting nominating petition could protect this interest and serve as an alternative to a filing fee.

the case at bar we have resolved the issues on the rights of the voters. The cases are, therefore, distinguishable.

In granting declaratory relief, we hold that the statutes are unconstitutional because they infringe upon the exercise of voting and associational rights without any compelling justification in violation of the First and Fourteenth Amendments. The State of Texas, through its political parties, will be enjoined from the enforcement of the Texas Election Code sections requiring filing fees and assessments of a candidate in order that his or her name be placed upon a primary ballot.

THORNBERRY, Circuit Judge (concurring specially):

At issue in the instant case is whether the State of Texas through the imposition of primary filing fees has unduly impinged upon the right of its citizens to associate for the advancement of political beliefs and the right of its qualified voters to vote and to cast their votes effectively. Because I am of the belief that it has, I concur in the result of this judgment.

The standard by which the constitutionality of these controverted election code provisions is to be measured is, as the majority points out, the *Williams* test:[1] Bearing in mind that only a compelling state interest can justify a state's limiting First Amendment freedoms, the Court must consider the facts and circumstances behind the law, the interests that the state claims to be protecting, and the interests of those who are disadvantaged by the classification. Accordingly, I examine, first, the interests of those disadvantaged by the provisions, and, secondly, the interests of the State.

At the very core of this dispute lies the First Amendment's guarantee of the right to engage in association for the advancement of beliefs and ideas[2] and the "fundamental political right" that constitutes the essence of a democratic society and is "preservative of all rights"—the right to vote.[3] In the State of Texas there is simply no way that a person can obtain the Democratic Party nomination other than by paying the filing fee and being elected. The election code includes no provision for nominating petitions at the party level. Moreover, under article 13.09[4] write-in votes may not be counted in primary elections, and no space on the ballot is provided for them. Consequently, voters are deprived of the opportunity to have their candidate considered for the Democratic Party nomination if he cannot post the filing fee.

Since in the overwhelming majority of Texas political offices nomination by the Democratic Party is tantamount to election, it is clear that restriction on entry into the primary may significantly impair the right to cast one's vote ef-

1. Defendants, relying primarily on Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), contend that this Court should not set aside the election code provisions unless they are grounded in a rationale wholly irrelevant to the achievement of a legitimate state interest, or unless they incorporate an element of intentional or purposeful discrimination. It is true that *Snowden* stated that "an element of intentional or purposeful discrimination" needs to be shown to demonstrate a denial of equal protection. *Snowden*, however, has been modified pro tanto by the language of Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and by the rationale of Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), wherein the Supreme Court found a denial of equal protection without an "invidious or purposeful discrimination."

2. The Supreme Court has repeatedly held that freedom of association is protected by the First Amendment. *See, e. g.*, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); United Mine Workers of America, Dist. 12 v. Illinois State Bar Assn., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1966); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

3. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886).

4. Tex.Election Code Ann. Art. 13.09 (1967).

fectively. In addition, the right of association is abridged significantly in that a person unable to pay the filing fee must, with the aid of those desirous of supporting him, form a new party or run as an independent: They are precluded by the high filing fee from associating within the established party. Undeniably, then, the State's high primary filing fees impose significant burdens on the right to vote and to associate. The question determinative of this controversy is whether there lies behind the high fees a State interest sufficiently compelling to justify the burdens.

Three State policies allegedly are furthered by this fee system. First, the State contends that the fees serve to limit candidacy to "serious" candidates. To discriminate against voters or candidates on the basis of the depth of their pocketbooks, however, is to wade into unconstitutional waters. Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). It is no answer to proclaim that those candidates without substantial financial backing cannot seriously hope to win. The seriousness and legitimacy of a political effort is not to be measured by the bullion with which it is bulwarked. Though modern politics may dictate that low budgets do not win elections, it cannot be doubted that those with low budgets are entitled to try. Thomas v. Mims, 317 F.Supp. 179 (S.D.Ala.1970). Clearly, this first alleged justification is without sufficient merit to warrant the imposition of these burdens.

Secondly, Texas seeks to ground these high fees in the State interest of regulating the ballot to prevent confusion of voters. Although courts have indeed approved the objective of regulating the ballot,[5] the approval has been bestowed within the context of nominal or reasonable fees.[6] Defendants have pointed to no instance in which fees of the magnitude here challenged—up to $8,900—have received judicial sanction. The fact that virtually all states assess filing fees smaller by a factor of ten or more than those of Texas, and some states none at all, quite strongly indicates that other states have not found the imposition of exorbitant filing fees a *sine qua non* of regulating the ballot.[7] I do not deny that Texas may have a compelling interest in regulating its ballot, but I am of the opinion that the interest can justify, at the very most, only reasonable fees; it cannot impart validity to the amounts here challenged.

Texas also asserts that the filing fee scheme pays for the primary and thus not only avoids draining the State treasury but also allows Parties to remain entities independent of the State. The justification of keeping the Parties private and unsubjected to State interests is, under the circumstances of this case, not a strong one. The Party's role in conducting the primary is, after all, purely ministerial and quite extensively regulated by the State. Nor, in light of the interests at stake, would the burden on the State treasury be onerous if Texas were to assume a substantial portion of the primary expenses. Indeed, as the majority points out, eighteen states require of candidates no filing fee to support the primary. Furthermore,

5. *See, e. g.,* Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Wetherington v. Adams, 309 F.Supp. 318 (N.D.Fla.1970); Jenness v. Little, 306 F.Supp. 925 (N.D.Ga.1969), appeal dismissed Matthews v. Little, 397 U.S. 94, 90 S.Ct. 820, 25 L.Ed.2d 81 (1970).

6. *See, e. g.,* Bynum v. Burns, 8th Cir. 1967, 379 F.2d 229; Kenneweg v. Allegany County Com'rs, 102 Md. 119, 62 A. 249 (1905); Socialist Party v. Uhl, 155 Cal. 776, 103 P. 181 (1909).; State ex rel. Riggle v. Brodigan, 37 Nev. 492, 143 P. 238 (1914); Bodner v. Gray. 129 So.2d 419 (Fla.1966); State v. Nichols, 50 Wash. 508, 97 P. 728 (1908); Wetherington v. Adams, 309 F.Supp. 319 (1970).

7. See Office of the Secretary of State, Proposed Election Law Changes, A Report to the 62nd Legislature of the State of Texas, December 10, 1970, at Appendix A.

although filing fees have been judicially sanctioned on grounds of contribution, defendants have pointed to no cases other than Texas cases that place the entire burden of primary expense upon the candidates. If Texas has a compelling interest in requiring primary fees for revenue purposes, the interest can justify no more than requiring a candidate to contribute a reasonable portion of the primary expenses attributable to his candidacy. The fees here challenged clearly do not fall within that ambit and must be invalidated.

I do not here undertake the task of determining what constitutes a reasonable fee. I would emphasize, however, that two of our most precious freedoms are at stake, and thus the dimensions of reasonableness within which the State may safely impose a fee are indeed low and narrow.[8]

8. This is especially true where, as in the instant case, the State has provided no alternative, such as a petition, to the filing fee.