Albert L. SPILLERS, Plaintiff,

v.

Morgan SLAUGHTER, as Clerk of the Circuit Court of Duval County, Florida, Harry M. Nearing, as Supervisor of Registration of Duval County, Florida, Edgar McCurry and Kitty Burnette, respectively, as Chairman and First Vice Chairman of the Republican Party of Duval County, Florida, and Richard Stone, as the Secretary of the State of Florida, Defendants.

Robert G. POPE, individually and on behalf of all others similarly situated, and Charles M. Keisling, individually, and on behalf of all others similarly situated, Plaintiffs, and Levy M. Wilcox and Charles B. Griffin, Jr., Intervenors,

v.

Harold B. HAIMOWITZ, Chairman, Duval County Democratic Executive Committee, S. Morgan Slaughter, Clerk of the Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida, Harry Nearing, Supervisor of Elections, Duval County, Florida, Richard Stone, Secretary of State and Commissioner of Elections, State of Florida, Defendants.

Civ. Nos. 71-21, 71-23.

United States District Court,
M. D. Florida,
Jacksonville Division.

April 8, 1971.

J. B. Stoner, Savannah, Ga., for Albert L. Spillers.

Stephen P. Smith, III, American Civil Liberties Union of Fla., Jacksonville, Fla., for Robert G. Pope, Charles M. Keisling, Charles B. Griffin and Levy M. Wilcox.

David U. Tumin and Thomas D. Oakley, Asst. Counsel, City of Jacksonville, for Morgan Slaughter and Harry M. Nearing.

Daniel S. Dearing, Chief Trial Counsel, Dept. of Legal Affairs, and Robert J. Vossler, Asst. Atty. Gen., Tallahassee, Fla., for Richard Stone, Secretary of State of Fla.

Greene & Greene, Jacksonville, Fla., for Harold B. Haimowitz.

Stockton & Stockton, Jacksonville, Fla., for Kitty Burnette.

Edgar W. McCurry, Jr., in pro. per.

Before RONEY, Circuit Judge, and McRAE and TJOFLAT, District Judges.

## MEMORANDUM OPINION

TJOFLAT, District Judge.

Case No. 71–21–Civ–J was brought by Albert L. Spillers in a dual capacity: as a prospective candidate in the Republican primary election for Mayor of the City of Jacksonville and as a representative of a class of registered Republican voters who desire to vote for him in the primary.

The consolidated case, No. 71–23–Civ–J, was instituted by Robert G. Pope as a prospective candidate in the Democratic primary for the office of Sheriff of the City of Jacksonville. He is joined as party plaintiff by Charles M. Keisling, representing a class of registered Democrats who desire to vote for Pope in the primary. Charles Griffin and Levy Wilcox, intervenors in that case, seek similar relief as candidates for City Council positions in that primary.

These plaintiffs and intervenors challenge the constitutionality of Section 99.-092, Florida Statutes, F.S.A., which requires a candidate in a party primary to pay a filing fee equivalent to five percent of the annual salary of the office sought.[1] They contend that the filing fee requirement is arbitrary and unreasonably high, and that its practical effect is to preclude the exercise of the right to vote and the right to seek public office. Their claim is that voting and running for office are expressions of free speech and association, and constitute privileges and immunities which are secured by the First and Fourteenth Amendments to the Constitution of the United States. Plaintiffs also allege that they, and those they represent, are without funds and that to require them to pay a fee is to deny them the equal protection of the law.

The nature of the right to vote in state and local elections has been discussed in a myriad of cases from almost every jurisdiction in the federal judicial system. While principles of free speech and association, due process and equal protection have been articulated in some of the cases, it has been held that the right of a citizen to vote in a state elec-

---

[1] Two percent of the fee goes directly to the political party, and, although the remaining three percent is transmitted to the state initially, most of it is eventually returned to the party. Total filing fees for the offices in issue are $1,500.00 for Mayor; $1,155.00 for Sheriff; and $250.-00 for City Councilman.

tion does not emanate from the United States Constitution or Federal law. Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970). Voting for state officers is a right or privilege of state citizenship, not of national citizenship; and, accordingly, it is not within the purview of the due process and privileges and immunities clauses of the Fourteenth Amendment. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

■ The states have long been held to have the inherent power to establish and regulate conditions under which the voting franchise may be exercised [Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965)], subject only to the limitation that the exercise of that power be compatible with principles of Equal Protection. As the Supreme Court has observed:

"* * * once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L.Ed. 2d 169 (1966).

\* \* \* \* \* \*

"In other words, the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution." Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573, 48 L.Ed. 817 (1904) [2]

■ The right to seek and hold an elective local office is an analogue or corollary to the right to vote. Jenness v. Little, 306 F.Supp. 925, 927 (D.C.1969). Similarly, its regulation is a matter solely within the province of the state. It is only when state regulation produces invidious discrimination that the courts have a duty to intervene. As the Supreme Court stated recently in Turner v. Fouche, 396 U.S. 346, 362–363, 90 S. Ct. 532, 541, 24 L.Ed.2d 567 (1970):

"We may assume that the appellants have no right to be appointed to the Taliaferro County board of education. But the appellants and members of their class do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications. The State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees."

■ In determining whether a state election law, such as the one here in question, meets the test of equal protection, the interests of the state and of the aggrieved candidate must be weighed. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 1, 21 L.Ed.2d 69 (1968). In our form of government, organized on a partisan basis, with party candidates rather than non-affiliated individuals facing one another in a general election, the state's interest in the conduct of a party primary is much the same as the interest of the political party.[3] Both desire (1)

---

2. It should be noted that most of the recent litigation involving state regulation of elections has dealt with legislative malapportionment and disenfranchisement of the Negro. Although the Supreme Court has described the right to vote in very broad and sweeping language, the decision in these cases has turned on equal protection grounds. See, for example, Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1924).

3. It is notable that a party primary differs from a general election in two respects. First, the electorate is limited by the voters' choice of party affiliation; and, secondly, the potential candidates are limited by party membership. A party primary does not contemplate general suffrage or a universal range of potential candidates from which the standard bearer is to be chosen.

that a nominee be chosen; (2) that the nominee be the choice of a majority of party members; (3) that the primary ballot be reasonably restricted in size so that a true majority choice can be made without an excessive number of "run-offs"; and (4) the elimination of spurious candidates.

■■ The defendants urge that the primary purpose of the filing fee is to achieve these ends, and that it thereby serves a compelling state interest. We agree. Moreover, the fact that the fee operates incidentally to defer party expenses in conducting the primary and to provide campaign funds for the nominee in the general election does not render the fee concept invalid. See, Carter v. Dies, 321 F.Supp. 1358 (N.D.Tex. 1970).

■ Plaintiffs refer to the poll tax cases as authority for the proposition that the imposition of a filing fee, as a condition to running in a party primary, is *per se* unconstitutional. A filing fee is markedly different in purpose and effect from a poll tax. Whereas the filing fee functions primarily to achieve a restricted ballot, the poll tax was designed to raise revenue. Moreover, the practical effect of the poll tax was to keep the class of indigent voters from the polls. Whether viewed as a revenue raiser or a discriminatory measure, the poll tax was an improper imposition on the right to vote.

This brings us to the last question: does the amount of the filing fee invidiously discriminate against the "poor candidate"? The three-judge court in Fowler v. Adams, 315 F.Supp. 592 (M.D.Fla. 1970), [dismissed for lack of jurisdiction 400 U.S. 1205, 91 S.Ct. 2, 27 L.Ed.2d 23 (1970)] held that the five percent fee was neither arbitrary nor unreasonably high. See, Weatherington v. Adams, 309 F.Supp. 318 (N.D.Florida 1970); Diffenderfer v. Porter Homer (No. 68–455 Civ.EC., S.D.Fla.1968) (unreported); Bodner v. Gray, 129 So.2d 419, 89 A.L.R. 2d 860 (Fla.1961). There has been no showing in the present case that the

five percent figure is unrelated to the state's interest in controlling the ballot or that it fails to achieve that purpose. Nor has there been any showing that it is "exhorbitant, arbitrary, capricious, unreasonable, or outrageously high" as suggested by plaintiff Spillers in his brief. Under these circumstances this court is not prepared to say that, as a matter of law, the challenged Florida Statute is unconstitutional.

Plaintiffs argue that because some eighteen states have devised a method to control the size of the ballot without requiring a filing fee we should view a filing fee as unreasonable *per se*. That other states may have chosen a different way to accomplish the same purpose does not render the legislative policy of Florida a nullity. As another three-judge court observed, in sustaining the validity of the statute here involved:

"[T]he determination here must be whether the state procedure is a reasonable and rational restriction on candidates or whether it is invidious discrimination, and not whether there are procedures which are equal to or superior to that used by the state. * * Its procedure being, as it is, a reasonable and rational restriction, and not one that is invidiously discriminatory it matters not whether other procedures might have been adopted by it." Weatherington v. Adams, 309 F.Supp. 318, 322 (N.D.Fla.1970).

See, Diffenderfer v. Porter Homer, supra, also upholding the Florida filing fee.

Plaintiffs rely for authority primarily on the recent three-judge court decision in Carter v. Dies, supra. In *Carter*, however, the court noted that: "the primary purpose of the filing fee assessments under the Texas statutory scheme is to raise revenue." In concluding that the collection of revenue is not an appropriate compelling state interest, the court went on to state that

"[T]he court does not mean to imply that there is no compelling interest pursuant to which the State may re-

quire a primary filing fee. We have limited our decision here to say that a filing fee violated the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment when it is used as a revenue collecting device or when made an absolute qualification in order for a candidate to get his name on the ballot. Indeed, there may be other compelling interests which would justify some type of reasonable fee."

Further discussion is not required to demonstrate that the *Carter* decision is not dispositive of the issues here.

For the reasons we have stated this court holds that Section 99.092 Florida Statutes, F.S.A., as it applies to the plaintiffs and intervenors in these cases, does not contravene the First and Fourteenth Amendments to the Constitution of the United States. This opinion is incorporated by reference in the order entered herein on February 19, 1971.