Michael Kim WONG et al., Plaintiffs,

v.

Emmery MIHALY, in his official capacity as Registrar of Voters of the City and County of San Francisco, Defendant.

No. C–71 1771.

United States District Court, N. D. California.

Sept. 17, 1971.

Ed Steinman, Philip Neumark, Sidney M. Wolinsky, San Francisco Neighborhood Legal Asst., Foundation, San Francisco, Cal., for plaintiffs.

Thomas M. O'Connor, City Atty., Thomas A. Toomey, Jr., Asst. Chief Deputy City Atty., Edmund A. Bacigalupi, Raymond D. Williamson, Jr., Deputy City Attys., San Francisco, Cal., for defendant.

## JUDGMENT

WOLLENBERG, District Judge.

Plaintiffs herein sue, challenging the constitutionality of a provision of Section 175 of the Charter of the City and County of San Francisco which provides that any candidate who desires to have his name placed in nomination and on the ballot for municipal office must pay to the Registrar of Voters a fee amounting to two percent of the current annual salary of the position he seeks.

Jurisdiction herein is conferred on this court by 28 U.S.C. § 1343(3).

On September 9, 1971, plaintiff Michael Kim Wong sought to have his name placed in nomination for Supervisor of said City and County. His request was refused by the Defendant Registrar of Voters, solely upon the ground that plaintiff Wong was unable to pay the filing fee prescribed by § 175, amounting to some one hundred ninety-two dollars.

On September 10, 1971, plaintiff Nathan Weinstein similarly sought to have his name placed in nomination for the office of Mayor of the City and County. His request was also refused by the Defendant, again solely upon the ground that plaintiff Weinstein was unable to pay the required filing fee, which amounted in his case to some eight hundred thirty-two dollars. Counsel for defendant has acknowledged that it has been defendant's uniform practice to refuse to even issue the required forms until the fee is paid.

Plaintiff Kristina P. O'Donnell is a registered voter of the City and County who desires to consider and vote for plaintiffs Wong and Weinstein, for Supervisor and Mayor respectively in the November 2, 1971 general election.

■ Each of these three named plaintiffs seeks to maintain this action in both individual and representative capacities—representatives of classes of San Francisco residents similarly situated with each of them. Their allegations bring them within the provisions of Rule 23, F.R.Civ.P., and this Court holds, taking note of the absence of any objection on this point from defendant, that the action is properly maintainable as a class action. Having granted representative capacity to plaintiff O'Donnell, the Court need not consider the question of the standing of plaintiff Associated Students of City College to sue in a wholly representative capacity on behalf of the same class which plaintiff O'Donnell seeks to represent, and therefore expressly declines to decide that issue.

The defendant herein, Emmery Mihaly, is the Registrar of Voters of the City and County of San Francisco and as such responsible for the administration, supervision and enforcement of charter provisions pertaining to elections in the said City and County of San Francisco, including the duty of certifying the names to be placed upon the ballot as candidates to elective office.

■ The plaintiffs' challenge to the quoted provision of § 175 of the Charter is based upon numerous constitutional grounds, one of which is, in the opinion of this Court, dispositive of the issue presented. Wong and Weinstein, who seek to become candidates, attack the provision upon the ground that it deprives them of equal protection of the laws, under the Fourteenth Amendment, in that it discriminates against them as potential candidates on the basis of their inability to pay the filing fee required.

At the time of filing of this action, under unchallenged provisions of § 175, there were but four days remaining for candidates to be nominated for municipal office. Upon review of affidavits of plaintiffs, and in order to prevent irreparable harm on the one hand and minimize disruption of established procedures on the other, this Court issued a temporary restraining order, requiring the defendant to allow plaintiffs Wong and Weinstein and any other person who attested to his inability to pay the filing fees to file their nomination papers and complete the other steps required to place their names in nomination. The hearing on this matter was set for two days later, so that the question could be resolved as expeditiously as possible.

In support of their arguments, plaintiffs have cited: Georgia Socialist Workers Party v. Fortson, 315 F.Supp. 1035 (N.D.Ga.1969), aff'd on other grounds, sub. nom. Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Carter v. Dies, 321 F.Supp. 1358 (N.D.Tex.1970), prob. juris. noted, 403 U.S. 904, 91 S.Ct. 2277, 29 L.Ed.2d 862 (1971); Jenness v. Little, 306 F.Supp. 925 (N.D.Ga.1969), appeal dism'd as moot, sub. nom. Matthews v. Little, 397 U.S. 94, 90 S.Ct. 820, 25 L.Ed.2d 81

(1970); Thomas v. Mims, 317 F.Supp. 179 (S.D.Ala.1970). Each of those cases may be taken to stand for the general proposition that a requirement that candidate must pay a filing fee in order to secure a position on the ballot violates the Equal Protection Clause when the candidate is unable to pay the fee.

Defendant argues that the City and County has an important interest which the questioned portion of § 175 is specifically designed to protect. That interest may be described as a limitation of the ballot to a manageable size so that confusion on the part of the voter might be minimized, and all but serious candidates eliminated. In support of that proposition, Wetherington v. Adams, 309 F.Supp. 318 (N.D.Fla.1970), is cited. That case found that a fee of five percent of the annual salary of the position sought was not excessive, and there being a rational relationship between the fee imposed and the legitimate state interest described, no violation of the guarantee of equal protection was found. There the Court reasoned that a rational relationship does exist between the means and the end because "serious" candidates in the past have been able to attract the necessary financial support, while the inability to obtain funds could be the measure of lack of popular support and an indicator that the candidate was not a serious one. The funds collected went to the political party in whose primary the candidate was running.

Two other recent cases, both interpreting the same statute as *Wetherington,* and both coming to the same conclusion have come also to the Court's attention. Fowler v. Adams, 315 F.Supp. 592 (M.D.Fla.1970), appeal dismissed for want of juris, 400 U.S. 986, 91 S.Ct. 477,

27 L.Ed.2d 436 (1971)[1]; Spillers v. Slaughter, 325 F.Supp. 550 (M.D.Fla. 1971), mot. for leave to file pet. for writ of man. den'd, 402 U.S. 971, 91 S.Ct. 1668, 29 L.Ed.2d 155. It is apparent therefore, that two distinct lines of authority have emerged regarding the question with which the Court is here faced. While elaborate attempts to reconcile the seemingly divergent direction of those lines might be made, the distinctions between their facts may be bereft of any real difference. Realistically, they are best viewed as opposed. An analysis of the interests here involved leads this Court to accept the approach used in the *"Jenness"* line of cases. That approach leads this Court to conclude that the challenged provision is violative of the guarantee of the Equal Protection clause by its discrimination against those who are unable to pay the filing fee required to gain a place on the ballot.

The decisions of the Supreme Court have made clear beyond a doubt that the right to vote is regarded as a most fundamental right, upon which much in our governmental system is based. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966). The right to run for office must be similarly regarded if the right to vote is to be assured of content. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); see, Gangemi v. Rosengard, 44 N.J. 166, 207 A.2d 665 (1965). On the other hand, governmental classifications founded upon wealth or the lack of it are regarded as highly suspect. Mc-

---

1. It is of more than passing interest to note that Mr. Justice Black, sitting alone, granted temporary relief to the plaintiff in *Fowler* by ordering that plaintiff's name be placed on the ballot for the election scheduled to take place before the full court could pass on the merits of his claim. 400 U.S. 1205, 91 S.Ct. 2, 27 L.Ed.2d 23 (1970). As noted, the appeal was ultimately dismissed for want of jurisdiction. Mr. Justice Black granted similar relief to appellants in Matthews v. Little, 396 U.S. 1223, 90 S.Ct. 17, 24 L.Ed.2d 45 (1969) appeal from Jenness v. Little, *supra.* As noted that case was ultimately dismissed by full court as moot.

Donald v. Board of Election Comm'rs of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Harper v. Virginia State Board of Elections, *supra*.

■ The significance of weighing a right deemed "fundamental" against a governmental interest to determine whether a "suspect classification" constitutes invidious discrimination lies in the nature of the test to be applied. While in many instances a governmental classification will be upheld upon a finding of a rational relation between the classification and the interest sought to be advanced, in cases of *either* "fundamental rights" or "suspect classifications", the classification fails unless a "compelling state interest" is found to require it. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The determination that a rational relationship existed between the imposition of the filing fee and the valid state interest of keeping the ballot to manageable size, made in Wetherington v. Adams, *supra,* and the cases following it does not, therefore, answer the inquiry. This Court concludes that the state interest asserted there, and here, cannot be considered compelling, and holds that provision of § 175 requiring payment of a fee violates the Equal Protection Clause as applied to plaintiffs Wong and Weinstein and the class they represent, i.e., those who desire to run but are unable to pay the fee.

Surely the state interest in controlling the size and complexity of a ballot, and in eliminating candidates who are other than serious are valid. The problem lies in the means here chosen to attempt to effect it. The proposition that every serious candidate will be able to pay the fee required cannot be accepted without question, and there has been no attempt here to demonstrate its validity. There is, in fact, much to suggest that money and seriousness of candidacy are not always to be found in the same office-seeker. On the other hand, it is clear beyond question here that the man who cannot pay, no matter how serious he is, cannot place his name in nomination. The possibility of a write-in campaign cannot be regarded as a sufficient answer to the problem. There would certainly seem to be other alternatives available to San Francisco. Petitions signed by a significant percentage of the electorate as a qualifying requirement in at least some instances have recently been upheld against constitutional challenge by a unanimous Supreme Court. Jenness v. Fortson, *supra,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). A certification of inability to pay as an alternative to paying the fee, might be adopted. The Court's function here, however, is not to dictate what should be done, but only to rule on what has been done. In so doing, it follows what it considers to be the sounder line of authority set forth in *Jenness, Georgia Socialist Workers Party, Thomas* and *Carter.*

Pursuant to Rule 65(a) (2), and the agreement of counsel made at the hearing of this matter in open court, trial of this matter was ordered advanced and consolidated with the hearing on the preliminary injunction, and this decision and order constitutes final disposition of the case. Pursuant to Rule 52(a), the findings of fact and conclusions of law are set forth in this opinion. It is, therefore,

Ordered that the Temporary Restraining Order previously issued in this matter on September 14, 1971 is hereby vacated and set aside, and it is further

Ordered that the defendant Emmery Mihaly, Registrar of Voters of the City and County of San Francisco, his successor in office, agents, employees, and all other persons in active concert or participation with him be, and there are hereby permanently enjoined from enforcing, following or applying, either directly or indirectly, that certain portion of Section 175 of the Charter of the City and County of San Francisco which reads as follows: "The candidate shall pay to the registrar at the time of filing his declaration of candidacy a sum equal to two

percent (2%) of the current annual salary for the office for which he is a candidate." Provided, however, that this order shall be applied only to plaintiffs Wong and Weinstein, and to others within the class represented by those named plaintiffs. For purposes of this order, a person shall be deemed to come within the protected class if he attests to the registrar that he is unable to pay the fee prescribed by Section 175.

The defendant remains free to enforce all other provisions of law with respect to the named plaintiffs, those coming within the class, and all other persons desiring to be nominated for municipal elective office in the City and County of San Francisco.

Let judgment be entered accordingly.